## JOHN LEE v. THE STATE.

### No. 245.   Decided November 13, 1901.

**1.—Rape of a Female Mentally Diseased—Prosecutrix Incompetent as a Witness.**

On a trial for rape of a female charged by the indictment to have been at the time so mentally diseased as to have no will to oppose the act of carnal knowledge, the prosecutrix is incompetent to testify as a witness and prove the corpus delicti; because the allegation in the indictment apprehends her insanity at the time charged as to the particular act, and the statute, article 768, Code of Criminal Procedure declares such person incompetent to testify.

**2.—Nonexpert Testimony as to Insanity.**

Nonexpert witnesses are not permitted to testify as to the condition of the mind of the prosecutrix on a trial for rape, where such witnesses have not qualified themselves by stating sufficient facts showing their knowledge and familiarity with prosecutrix to enable them to give an opinion.

**3.—Rape of a Mentally Diseased Female—Evidence Insufficient.**

See opinion for facts held insufficient to support a conviction of rape of a female so mentally diseased as to have no will to oppose the carnal act.

Appeal from the District Court of Hopkins. Tried below before Hon. H. C. Conner.

Appeal from a conviction of rape; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the salient features of the case and no further statement is necessary.

*Crosby & Dinsmore,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of rape, and his punishment assessed at twenty-five years confinement in the penitentiary.

The indictment is in two counts; both counts, however, charging that Mattie Mining, the alleged ravished female, was at the time so mentally diseased as to have no will to oppose the act of carnal knowledge, the said John Lee then and there knowing her to be so mentally diseased.

The first error complained of is the action of the court permitting the prosecuting witness, Mattie Mining, to testify against appellant. Appellant's proposition under this assignment is that the indictment alleged the insanity of the prosecutrix at the time of the alleged offense, and article 768, Code of Criminal Procedure, prohibited her from testifying in regard thereto. The portion of said article referred to reads as follows: "Insane persons are not competent to testify, who are in an insane condition of mind when they are offered as witnesses, or who were in that condition when the events happened of which they are to testify,"—it being contended here that the very allegation in the indictment on which the State sought the conviction charged the insanity of the prosecutrix at the time of the commission of the offense. The language used in the charge and in the statute defines this offense as follows: "It is rape to have carnal knowledge of a woman being so mentally diseased at the time as to have no will to oppose the act," etc. Does this language imply the same unsoundness of mind required to exclude a witness from testifying, or may the witness be merely weak in mind at the time of the alleged rape, and not be insane, and, if merely weak, how weak in mind must she be? We are not now discussing a case in which the question of consent vel non figures. Of course, there may be cases in which a weakness of intellect may be taken into consideration by the jury in determining whether or not consent to the carnal act was given. But here the question of consent is assumed, and the act of copulation occurs simply because the victim's mind was so unsound as to be incapable of giving assent. How unsound must it be? Evidently it must be so impaired as to be incapable of yielding an intelligent assent to what is being done. In our opinion, the same test must be applied to this impairment of intellect which exonerates from responsibility on account of insanity as to other criminal matters. That is, the intellect must be so broken down or destroyed by disease as not to know the right and wrong of the particular act, or, knowing the right and wrong thereof, on account of mental disease not able to oppose the will to the act of carnal intercourse. In other words, if the female is intelligent, and is capable of yielding to persuasion, and is overcome by that, she is not the subject of rape, under this statute. On the contrary, if she is an idiot, or so imbecile, on account of her mental disease, as to have no will power to assent or dissent, then she is protected by the

statute. We accordingly hold that, under the allegations of this indictment, the prosecutrix was not a competent witness to prove the corpus delicti of the offense charged; that is, the allegation in the indictment apprehends her insanity at the time charged as to the particular act, and as to that she is not a competent witness. Lopez v. State, 30 Texas Crim. App., 487; Thompson v. State, 33 Texas Crim. Rep., 472; 2 Bish. New Crim. Law, secs. 1122, 1123; Crosswell v. People, 13 Mich., 427, 87 Am. Dec., 774; and see Baldwin v. State, 15 Texas Crim. App., 276.

Appellant also excepted, by a number of. bills, to the action of the court permitting certain nonexpert witnesses to give their opinions as to the condition of the prosecutrix's mind; the ground of objection being that said nonexperts had not qualified themselves by stating sufficient facts showing their knowledge and familiarity with prosecutrix to enable them to give an opinion. As to some of these. witnesses, unquestionably appellant's objection is well taken. Williams v. State, 37 Texas Crim. Rep., 348.

Appellant also strenuously contends that the evidence fails to show that prosecutrix was at the time of the alleged act so mentally unsound as to have no will power to oppose the act of carnal knowledge; that, on the contrary, the testimony showed. that she was not unsound as to the particular act, but was then compos mentis, and capable of assent- ·ing to what was done. If we recur to the testimony of the witnesses, outside of their opinions, the testimony even suggesting imbecility is exceedingly weak. One witness says that he considered her of weak mind because, when he came to the house and hallooed, she did not stop on the gallery and talk to him, but came out to the fence where he was, and on one occasion she came out to the fence and spit over it. Another witness says that he asked how the family were, and she replied they were all down with the smallpox; but it is not disclosed whether this was true or false. Another witness says that she did not associate with children of her own age, but with children younger or older than she; while another says that on one occasion when going to church she did not walk with the young man who had no company, but walked along beside another young man who had a lady accompanying him, but it is not shown how this came about, or that the young man who had no company desired her to walk with him. These are fair samples of the acts detailed which, to the minds of the witnesses, suggest she was of weak intellect. At most, it occurs to us, if these matters be regarded as acts of eccentricity, they are such as might pertain to many sane individuals. (We would remark that it is a little singular that no physician was introduced, either to give an opinion based upon his knowledge of the prosecutrix or upon a hypothetical case stated.) If, on the other hand, we recur to the testimony of prosecutrix, she would appear to be rather bright than otherwise. She seems to have taken control of the other children, her father and mother being laborers and poor, to have made contracts for their hire, and to have supervised their

accounts. She weighed the cotton picked, and seems to have kept accurate weights, as her employers say they were always satisfactory. Her opportunities for attaining knowledge were not of the best. She attended school but a short time; but this she improved, as she could "read, write, and cipher" very well. Her testimony given on this trial, far from suggesting she was an imbecile, would indicate that she was brighter than the ordinary witness of her age. Her narration of the events attending her seduction, which took a good deal of persuasion, does not bear the earmarks of imbecility. On the contrary, her account shows she planned the occasion in a shrewd and intelligent manner. She selected a night when her father and the younger children were away from home. She knew that her mother was deaf, and when appellant came on the gallery of the house she went to him, and had him come in the room where she slept. She states she knew it was wrong, and realized if her father knew it he would whip her. Moreover, her account of her agreement to run off with defendant, and her flight, does not agree with her insanity, but rather induced by a morbid amorous propensity on her part; as she in effect admits she had begun to love appellant, and he proposed if they would go to Louisiana he would make her his wife. Her method of flight, moreover, and its accomplishment, is in perfect harmony with an intelligent mind. She prepared herself, and went with appellant from her home at night. They went to Cooper together in a buggy. There appellant left her, and returned home, while she waited for the train to convey her to Shreveport. From Cooper she went to Commerce. There she found she would be delayed, in the neighborhood of home. Consequently she procured a hack, and went across the country some three miles, to Campbell, where she intercepted a train on another road. Thence she went straight to Shreveport, registered at a hotel, and waited there for appellant several days, until her whereabouts were ascertained, and she was brought back to Hopkins County. All this shows, to our minds, that she was not insane, and was not deprived of her will power to resist the act of carnal intercourse. Her conduct would appear to be attributable to her associations; the evidence showing that she associated with negroes, and especially with appellant and his family, on the same footing as if they were white people. This, together with her amorous propensities, gave the opportunity for her seduction. We do not believe the law of rape applies to a case like this, but was intended to protect idiots, imbeciles, and insane,—not persons who naturally or from association have become depraved, but those only whose minds are so impaired by disease as that they have no will power to oppose the act of carnal intercourse. Of course, the conduct of appellant was reprehensible. It was immoral, not to say beastly. According to this record, he was afforded an opportunity and took advantage of a young girl, to her undoing. He may have been guilty of some other offense, but not the offense of rape under our statute. The judgment is accordingly reversed, and the case remanded.

*Reversed and remanded.*