## FRED WILLIAMS V. THE STATE.

No. 16503.   Delivered March 7, 1934.
Reported in 69 S. W. (2d) 418.

The opinion states the case.

*Vickers & Campbell,* of Lubbock, and *R. L. Graves,* of Brownfield, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of rape, and his punishment assessed at confinement in the state penitentiary for a term of 10 years.

The indictment charges appellant with the "rape of Ethel Foster, she being then and there so mentally diseased at the time of said carnal knowledge as to have no will to oppose said act, and the said Fred Williams then and there knowing her to be so mentally diseased." To meet this allegation, the state was required to prove, first, the act of intercourse by the appellant, and, second, that Ethel Foster was mentally unsound at the time to the extent that she had no will to oppose the act. If the state failed to prove either fact beyond a reasonable doubt, an ac-

quittal should result. Therefore, the evidence must show that prosecutrix was mentally unsound to the extent that at the time she had the act of intercourse she had no will to oppose said act.

To prove an act of intercourse by the appellant with said Ethel Foster, the state offered O. L. Foster, a brother of Ethel, as a witness, and he stated that on the 28th day of October, 1932, he went to his father's home on a visit. Upon his arrival there, he observed the appellant leaving the house by the rear door, the father of Ethel at the time being in the field. The witness entered the home and found his sister Ethel holding to the foot of the bed, but the bed did not appear to be disturbed or ruffled, nor was there anything in the conduct or appearance of Ethel which aroused his suspicions. On the 5th of March, 1933, after the witness had learned of his sister's condition, he made a complaint against the appellant, charging him with rape, and on the 8th day of March, 1933, he made a complaint against Ben Rhodes, charging him with rape of Ethel Foster. Charley Webb testified for the state that in January, 1933, he had a conversation with the appellant in which the appellant told him that he was fixing to take Ethel Foster to Dobbs, New Mexico, so that she and Ben Rhodes could get married. A. W. Alsup testified for the state that in the month of October, 1932, he had a conversation with the appellant in which appellant asked him why he didn't go over to Ethel Foster's and have a good time, to which he, the witness, replied, "If I did I would want her to have a good mind," whereupon the appellant said, "Hell, that makes no difference with me." A. D. Cooper testified for the state that some time on or about the 11th day of July, 1933, he had a conversation with the appellant in which the appellant remarked, "Have you heard of my new son over there," pointing to the Foster home. This is all the testimony introduced by the state bearing on the alleged act of intercourse by the appellant with Ethel Foster. The appellant testified in his own behalf, denying any act of intercourse with Ethel, and he also proved by his wife, Mrs. Williams, that Ethel Foster told her that Ben Rhodes was the author of her pregnant condition. With reference to the unsoundness of the mind of Ethel Foster, the state proved by her father, brother, sister-in-law, and one doctor that in their opinion Ethel was of unsound mind, and a teacher who testified that she taught Ethel while she attended school and that in here opinion she was mentally deficient, while another doctor and neighbors testified that while she, the said Ethel Foster, was crippled and could not get around very well, yet she was of sound mind. We do not deem it necessary to set forth the facts upon which the witnesses based their opinions as

it would not materially change the conclusions reached. The testimony further shows that she, the said Ethel Foster, attended school four years and completed the 3rd grade; that she learned to read and could read a newspaper; that at the time of the alleged act of intercourse she was 26 years of age and resided with her father on a farm; that she and her father did the cooking and performed all the household duties; that she visited her neighbors by herself; that she attended parties and associated with a young man by the name of Ben Rhodes.

One of the main questions to be considered is whether Ethel Foster comes within the purview of the statute. To what extent must a girl be of unsound mind to obtain the protection of the statute? Where is the line of demarcation by which a man may know when he is transgressing the law? Judge Henderson, speaking for this court in the case of Lee v. State, 64 S. W., 1047, with reference to the condition of mind of the injured female, said: "How unsound must it be? Evidently it must be so impaired as to be incapable of yelding an intelligent assent to what is being done. In our opinion, the same test must be applied to this impairment of intellect which exonerates from responsibility on account of insanity as to other criminal matters. That is, the intellect must be so broken down or destroyed by disease as not to know the right and wrong of the particular act, or, knowing the right and wrong thereof, on account of mental disease not able to oppose the will to the act of carnal intercourse. In other words, if the female is intelligent, and is capable of yielding to persuasion, and is overcome by that, she is not the subject of rape, under this statute."

We do not believe the facts in this case are sufficiently cogent to bring the alleged injured female within the intent and spirit of the statute. The testimony shows that while she was crippled and not physically very strong, yet she, with the aid of her father, did the cooking and looked after the household affairs; that she went to school and learned to read; that she visited her neighbors by herself, went to parties, and was anxious to get married. She certainly is not so impaired mentally as not to know the right from the wrong because she attended school four years and learned to read; she helped as much as she was physically able with the cooking and household duties; she had some conception of what marriage meant; she had sufficient intelligence to visit neighbors by herself and attended parties. Under these circumstances, we believe that the testimony of her teacher who testified in this case accurately expressed her mental condition when she testified that Ethel is mentally deficient, but mere mental deficiency would not bring her within

the scope of the statute. She must be so mentally deranged as to have no will power to assent or dissent. Without entering upon a further discussion of the question, we content ourselves with the statement that we believe that the testimony in this case does not measure up to the requirements of the law as to the mental unsoundness of the female alleged to have been raped.

Therefore, the judgment of the court is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.