**Sam HARRIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 44473.**

Court of Criminal Appeals of Texas.

Jan. 11, 1972.

John S. Walker, Duke Taylor, Center, for appellant.

Jim D. Vollers, State's Atty., Austin, for the State.

### OPINION

MORRISON, Judge.

The offense is rape of a mentally diseased woman; the penalty assessed, twenty-five (25) years.

The evidence shows the prosecutrix, a nineteen year old female, ran up to appellant's car, in which he and 2 others were riding, while it was stopped at a railroad crossing, asked if she could go along and got into the car which was then driven off by appellant to the spot where the alleged act took place.

Appellant contends that the evidence is not sufficient to support the verdict.

Article 1183 Vernon's Ann.P.C. provides in part that rape is:

" . . . carnal knowledge of a woman other than the wife of the person having such carnal knowledge with or without consent and with or without the use of force, threats or fraud, such woman being so mentally diseased at the time as to have no will to oppose the act of carnal knowledge, the person having carnal knowledge of her knowing her to be so mentally diseased. . . . "

■ To prove its case, the State must show first, that an act of intercourse occurred, and, second, that at the time the prosecutrix was mentally unsound to the extent that she had no will to oppose the act. If the State fails to prove either beyond a reasonable doubt an acquittal should result. Williams v. State, 125 Tex.Cr.R. 477, 69 S.W.2d 418.

Assuming the act took place, the basic question then is whether the prosecutrix falls within the protection of the statute. Was her mental condition such that she could not resist the act? In Lee v. State, 43 Tex.Cr.R. 285, 64 S.W. 1047, the court considered the question of how unsound the victim's mind must be. They concluded it must be so impaired that it cannot intelligently assent to what is being done and that the intellect must be so broken down and destroyed by disease that, in regard to the particular act, it cannot perceive right from wrong, or, knowing the right from wrong of the particular act, has no will to oppose the act because of the mental disease.

The State called Gerald Anderson, a psychologist from the Austin State School, who had known and tested the prosecutrix, as an expert witness. He testified the prosecutrix had been at the Austin State School for almost seven years, had a 66 I. Q., was in the middle range of mental retardation and could not function on the outside without supervision. On direct examination the following exchange occurred:

"DISTRICT ATTORNEY: In your opinion, Mr. Anderson, based upon your testing of Mary Ann Watts, tell us whether or not she is a person so mentally retarded or mentally diseased that she would not have the will to normally resist the act of intercourse?

"MR. ANDERSON: This is a very difficult question to respond to. When you turn (sic) it resistance, being capable of resisting, I know from past behavior that she had initiated such contacts before. That she may do so to achieve immediate reward, a tangible reward or the pleasures of social contact, psychological pleasure."

And on cross-examination:

"DEFENSE COUNSEL: Thank you. Mr. Baker, a moment ago, also, on direct examination, asked the question which I believe was not answered was could she resist the sex act. Could Mary Ann Watts resist a sex act?

"MR. ANDERSON: I believe it is within her capability to resist."

On redirect, the District Attorney questioned Anderson further concerning the prosecutrix's will to resist or react to the act of intercourse and he replied:

"MR. ANDERSON: If I may say, if she had not wanted to engage in this act, I believe she has the physical capacity and intellectual capacities to resist, to fight. To try to escape."

And on re-cross examination:

"DEFENSE ATTORNEY: Just a few more questions, Mr. Anderson. Is it your opinion, based on your knowledge of Mary Ann Watts that she has ability, based upon her learning level, to know generally right from wrong?

**708**

"MR. ANDERSON: Yes, sir, I would say that."

Additionally it was shown that the prosecutrix had the physical development of a 19 year old, liked to pick out her own clothes, handled money, had had a job at the state school laundry based on ability and, under certain circumstances, could give the appearance of being normal. It was also shown that the prosecutrix could not write her name, could not count money, preferred the company of younger children and liked cartoons on T.V. best.

Clearly the prosecutrix had mental, emotional and social deficiencies. However, mental deficiency is not sufficient to support a conviction under this statute. Williams v. State, supra. Her mental condition must be such that she cannot oppose the act. The evidence indicates that, generally, she knew right from wrong and could resist the act if she wished.

Additionally, even if she did not have sufficient mental capacity to resist the act, the statute also requires that the appellant knew it. The record shows appellant never saw the girl before she approached his car and asked to get in. Anderson testified she could appear normal for a time especially to someone with Harris' background and educational level. His companions cautioned him against becoming involved. Indeed, he might have known he was doing something wrong, that he should not be having intercourse with this woman. However, there is a difference between engaging in an illicit act of intercourse and engaging in that act knowing the woman is so mentally diseased she cannot resist it. There is nothing in the record to indicate he knew her condition, if it existed.

Accordingly, the judgment is reversed and remanded.