**Maxie Ray BRADFORD, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 44566.**

Court of Criminal Appeals of Texas.

Feb. 23, 1972.

Rehearing Denied April 5, 1972.

Melvyn Carson Bruder, Dallas (on appeal by appointment), for appellant.

Henry Wade, Dist. Atty., John B. Tolle and Edgar A. Mason, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

ODOM, Judge.

This appeal is taken from a conviction for the offense of rape of a mentally diseased woman. The jury assessed punishment at fifty years.

The record reflects that the prosecutrix was eighteen years old at the time of the offense. She had never learned to walk, wore a diaper because she had no control over her bodily functions, slobbered a great

deal, could not feed herself and thus had to be fed like an infant, and could not talk. No medical testimony was introduced concerning her mental capacity, but lay witnesses who had known her from approximately four to fourteen years testified as to their opinion that the prosecutrix never understood what was occurring around her and that she was unable to understand when others talked to her or to respond to them. Her mental age was described by these witnesses as being that of a child from one to two years old.

On the day in question, Mrs. Emma Louise Lakes went to the home of the prosecutrix and was about to knock at the front door when she "heard a groaning going on in the house." She pulled back the shade on the window by the door and observed appellant, who was known to her, on top of prosecutrix engaged in an act of sexual intercourse. Mrs. Lakes' cousin, Billy Wilder, was standing at the curb in conversation with a third party who was in an automobile; and Mrs. Lakes, unable to attract his attention by gestures, finally yelled to Wilder to come to the house. When Wilder looked into the window, he said "Maxie, . . . if I get in there I'm going to kill you." Appellant had fled by the time they entered the house. Mrs. Lakes and Wilder then left the scene to summon help and notified the sister of the prosecutrix, who summoned the police.

Mrs. Lurine Clark was one of the persons who was apprised of the incident by Mrs. Lakes. Mrs. Clark, who also knew the appellant, had observed him "peeking through the window on the front porch" about thirty minutes earlier. She immediately went to take care of the prosecutrix and observed blood on the girl's left leg and seminal fluid coming out of the girl's vagina.

James Lewis, Jr., of the Dallas Police Department, was the first officer to arrive at the scene. He saw the prosecutrix sitting on the living room floor, very nervous and upset and "flailing her arms around and grunting and making funny noises." When he observed that she could not speak, he questioned the people who had gathered there. As a result of these conversations, he put out a description of the suspect on the police radio. He then followed the ambulance which took the girl to the hospital and learned that, due to her highly disturbed condition, no examination had been made.

Officer Lambright, of the Dallas Police Department, was patrolling this neighborhood when, shortly after having received a description of the suspect, he answered a disturbance call at a nearby cafe. There, he found a large crowd gathered around Wilder, who was restraining appellant. Officer Lambright was forced to call a "cover squad" in order to extricate appellant and place him under arrest.

Appellant challenges the sufficiency of the evidence to support the conviction. He contends that the state failed to prove that the prosecutrix was so mentally diseased that she comes within the class protected by the statute,[1] and that he had carnal knowledge of the girl.

We find the evidence sufficient to show that the prosecutrix was a mentally diseased woman within the meaning of the statute. We also find the evidence sufficient to support the jury's determination that appellant should have been aware that she was so mentally diseased as to be unable to give consent.[2] Compare Harris v. State, Tex.Cr.App., 474 S.W.2d 706 (1972).

1. The applicable statute is Article 1183, Vernon's Ann.P.C., which provides in part that rape is: ". . . the carnal knowledge of a woman other than the wife of the person having such carnal knowledge with or without consent and with or without the use of force, threats or fraud, such woman being so mentally diseased at the time as to have no will to oppose the act of carnal knowledge, the person having carnal knowledge of her knowing she is so mentally diseased . . . ."

2. It should be noted that appellant at his trial interposed the defense of alibi. The prosecutrix had been brought into the

■ Under our decision in Nilsson v. State, Tex.Cr.App., 477 S.W.2d 592 (1972) and the cases therein cited, the evidence is sufficient to prove carnal knowledge.

■ Appellant also contends that the trial court failed to properly instruct the jury as to what constitutes a "mentally diseased" woman within the meaning of the statute. The court charged the jury that:

"Rape (as used herein) is the carnal knowledge of a woman other than the wife of the person having such carnal knowledge, such woman being so mentally diseased at the time as to have no will to oppose the act of carnal knowledge. The person having carnal knowledge of her knowing her to be so mentally diseased."

This charge tracks the language of the statute, and no error is shown. See 4 Branch's Ann.P.C.2d 259, Sec. 1941.

By his grounds of error numbers five and six, appellant contends that the trial court erred in allowing Emma Lakes and a defense witness, Louise Bell, to give opinion testimony concerning the mental capacity of the prosecutrix.

Each witness detailed the facts upon which her opinion was based. In 2 McCormick & Ray, Texas Evidence, Sec. 1421 (2d Ed.), it is written:

"The rule has long been settled in this state that the opinion of an ordinary witness, who has had a reasonable opportunity to observe the acts and conduct of the person in question, may be received provided it is preceded or accompanied by a statement of the facts upon which it is based."

■ We find no abuse of discretion in the admission of such testimony.

Further, as to Louise Bell, no timely objection to the allegedly incompetent testimony was made. An objection was made when the witness was first asked her opinion concerning the prosecutrix being "a very badly retarded child." This objection was overruled. Then the following is reflected in the record:

"Q. (By the Prosecutor) She's a very badly retarded child?

"A. Well, she gets around if she wants to.

"Q. How does she do that?

"A. She scoots around.

"Q. Do you think she could add two and two?

"A. No.

"Q. Do you think she could add one and one?

"A. No.

"Q. Before the lawyer objected to my question, you were going to say yes. I saw you doing like that (indicating), and then after he objected you changed your mind. Is that right?

"A. No.

"Q. Well, is she a badly retarded child or not?

"A. She's a retarded girl.

"Q. A very badly retarded girl? Let me ask you this. Have you ever seen a retarded child more retarded than she is in your life?

"A. No.

"Q. She's the worst one you have ever seen. Is that right?

---

courtroom to be identified by Mrs. Lakes. Appellant, on cross-examination, stated that although he had never previously seen or heard of the girl, it had taken him only five or ten seconds to realize that she was a very severely mentally retarded person when he saw her in the courtroom. It should be further noted that the bringing of the prosecutrix into the courtroom was proper so the jury might observe her condition.

"A. Yes."

No objection was made to the foregoing testimony and no request was made to strike the same. Therefore, no error is shown. e. g. Maldonado v. State, Tex.Cr. App., 467 S.W.2d 468; Parsley v. State, Tex.Cr.App., 453 S.W.2d 475.

■ By his eighth ground of error, appellant contends that the trial court erred by failing to grant his motion for a mistrial, based upon an improper question asked of him on cross-examination.

The incident complained of is as follows:

"Q. And he wasn't with that girl that day, was he?

"A. What day?

"Q. September 20, the date you raped [the prosecutrix]."

Appellant's objection was sustained, and the jury was instructed to disregard the prosecutor's remark. No reversible error is shown. White v. State, Tex.Cr.App., 444 S.W.2d 921. See also, Ward v. State, Tex.Cr.App., 474 S.W.2d 471.

■ By his seventh ground of error, appellant contends that the trial court erred in permitting evidence of the circumstances of appellant's arrest. However, no objection to this testimony was made. No error is presented for our review. Maldonado v. State, supra; Parsley v. State, supra.

Appellant also brings five unbriefed grounds of error. These do not meet the requirements of Article 40.09, Sec. 9, Vernon's Ann.C.C.P., and therefore are not properly before us for review.

Finding no reversible error, the judgment is affirmed.