Anastacio Hernandez GARCIA,
Appellant,

v.

The STATE of Texas, Appellee.

No. 08-81-00019-CR.

Court of Appeals of Texas,
El Paso.

April 14, 1982.

Adolfo Ouijano, Jr., El Paso, for appellant.

Steve Simmons, Dist. Atty., El Paso, for appellee.

Before PRESLAR, C.J., and WARD and OSBORN, JJ.

## OPINION

WARD, Justice.

This is an appeal from a conviction for rape, alleged to have occurred on April 10, 1979. The jury assessed punishment at eighteen years confinement. We affirm the conviction.

The theory of culpability, as alleged in the indictment, was that the complainant suffered from a mental defect which rendered her incapable of appraising the nature of the act of intercourse or of resisting it. Under Penal Code Section 21.02(b)(4), this condition, coupled with Appellant's knowledge of the mental incapacity, would constitute lack of consent to the act.

Appellant's two grounds of error challenge the sufficiency of the evidence as to the complainant's mental incapacity and as to the Appellant's knowledge of her condition. Accordingly, we have examined the record in a light most favorable to the verdict.

The record discloses that the victim was a twenty-six-year-old, unmarried woman, residing with her mother. She had attended special schools for the mentally retarded for a period of twelve years, ending in 1974. She could not identify the schools or their location. Prior to her entry into the special education program, for a period less than three years, her retardation had gone un-

diagnosed. The core of her final education consisted of training in rudimentary housekeeping chores.

She had never been employed. She did not know the year of her birth or the ages of her three siblings. She could not tell time, read or write. She spoke English and Spanish, but had an extremely limited vocabulary. She was constantly under supervision, and did not engage in dating. Her household chores consisted of laundering, cooking, dishwashing and cleaning. She testified that she was able to handle these tasks independently, but her mother testified that the quality of her work was poor and the chores often had to be redone.

Dr. Randolph Whitworth, psychologist, presented expert testimony based upon an interview and psychological testing which he personally conducted. He testified that the complainant's verbal I.Q. was 55, her performance I.Q. was 61, and her full scale I.Q. was 55. This placed her intellectually in the bottom two percent of the population. He categorized her as mildly retarded, her mental capacity falling in the lower end of the I.Q. bracket from 50 to 70. Her reading and spelling skills were on a second-grade level, and her arithmetic abilities were gauged at first-grade level. The psychologist estimated her overall intellectual development to be equivalent to that of a normal nine- or ten-year-old child.

He further testified that she had a limited capacity for concrete thought, but virtually no ability in the area of abstract reasoning. During his examination, she demonstrated no problem-solving ability whatsoever. He expressed the opinion that she was capable of understanding the physical nature of sexual intercourse and the possible consequence of pregnancy, but that she would be incapable of appraising the attendant psychological, social and economic consequences. Resistance to the act would have been difficult due to her intellectual impairment and the consequent manner in which she had been raised.

Testimony further revealed that the complainant's mother had expressly advised the Appellant of her daughter's condition prior to the alleged offense. He knew the daughter to whom the mother had referred, having come in contact with her on approximately six occasions prior to the date of the offense.

At the punishment phase, the jury was advised of the Appellant's prior conviction for indecency with a child.

Ground of Error No. One alleges that there was insufficient evidence that the complainant's mental defect was of such a degree of severity as to render her incapable of either appraising the nature of the intercourse or of resisting it.

Both parties express concern over the limited case law addressing this type of rape. A brief synopsis of the case law and statutory developments in this area is appropriate.

In the late 1800's, the Texas rape statute required lack of consent on the part of the prosecutrix, and force or fraud on the part of the defendant. No express provision was included concerning mentally defective or diseased complainants. Mental incapacity to consent was held to be an unwritten component of the common law concept of rape. *Baldwin v. State*, 15 Tex.App. 275, 280 (1883).

In *Baldwin*, the court evaluated a conviction for rape of an adult female epileptic. The opinion cited the contemporary rule that a female over the age of ten was presumed capable of giving consent, but that the presumption could be rebutted by proof of mental incapacity. The condition had to be such that the female did not know that extramarital carnal knowledge was morally wrong, or, if cognizant of such wrong, was yet incapable of resisting. The court considered the theory of culpability from two standpoints of mental incapacity: 1) insanity and 2) imbecility not rising to the level of insanity. The court found that only the former would support a conviction for rape. *Id.* at 281. The Legislature had not drafted the statute in such a fashion as to afford protection to a prosecutrix whose intellectual level was that of a small child, but who was not legally insane. *Id.* at 281,

286. This portion of the opinion was viewed by a later court as a call for legislative action. *See: Sanchez v. State,* 479 S.W.2d 933, 938 (Tex.Cr.App.1972).

In 1887, the Legislature statutorily adopted the suggestion of the *Baldwin* opinion and afforded protection to any woman "so mentally diseased at the time as to have no will to oppose the act of carnal knowledge." 1887 Tex.Gen.Laws, ch. 10, sec. 17 at 7, 9 H. Gammell, *Laws of Texas* 805 (1889).

Subsequent decisions of the Court of Criminal Appeals did not address the new legislation in light of the analysis in *Baldwin.* For a period of ninety-five years, the degree of mental deficiency required to invoke the protection of the rape statute was equated to legal insanity. The disease or defect must have been of the same severity as would exonerate a criminal defendant from liability for his conduct. *Lee v. State,* 43 Tex.Cr.R. 285, 64 S.W. 1047, 1048 (Tex. Cr.App.1901); *Williams v. State,* 125 Tex. Cr.R. 477, 69 S.W.2d 418, 419 (Tex.Cr.App. 1934); *Harris v. State,* 474 S.W.2d 706, 707–708 (Tex.Cr.App.1972). These cases were decided under former Penal Code Article 1183. The opinions also reflect the consequent evidentiary result that a female qualified for protection under the rape statute by reason of mental defect could not be a competent witness in the trial. *Lee v. State, supra,* at 1048.

In 1972, the Court of Criminal Appeals departed from the rule established in *Lee. Sanchez v. State,* 479 S.W.2d 933, 938 (Tex. Cr.App.1972). Reading the post-1887 rape legislation in light of *Baldwin,* the court found a legislative intent to protect mentally diseased or defective victims whose condition did not rise to a level of insanity. The opinion further eliminated the automatic disqualification of mentally deficient victims as competent witnesses.

In 1974, the present rape statute, Penal Code Section 21.02, became effective, requiring that the mental deficiency render the victim incapable of appraising the nature of the act of intercourse or of resisting it.

Appellant contends that the evidence was insufficient to establish the required degree of mental deficiency on the part of the complainant. In support of that position, he offers a comparison with the evidence in *Lee, Williams,* and *Harris* in which the convictions were overturned. By contrast, he cites *Sanchez v. State, supra; Bradford v. State,* 477 S.W.2d 544 (Tex.Cr.App.1972); and *Smith v. State,* 555 S.W.2d 747 (Tex.Cr. App.1977), in which the evidence was held to be sufficient on this issue.

In light of the evolution in legislative and judicial attitudes toward mental deficiency, these cases do not support Appellant's contention. With the exception of *Smith,* these cases pre-date the decision in *Sanchez.* As a result, their treatment of the facts and their resulting conclusions reflect the now discredited equation of mental incapacity to consent with legal insanity.

In addition, the evidence of mental deficiency in *Lee, Williams* and *Harris* was not as substantial as in the present case. In *Lee,* the prosecutrix could read, write and perform arithmetic functions. She arranged contracts for hire, supervised business accounts, weighed cotton, and kept accurate records. The evidence indicated that she knew the act of intercourse was wrong, feared punishment by her father, and engaged in an involved procedure for departing the area with the defendant. The facts are totally distinguishable from the instant case.

Beyond the evidentiary comparison, the *Lee* opinion is of highly questionable support for any current appellate proposition. The social and judicial climate of the time is well represented in the conclusion of that court:

> Her conduct would appear to be attributable to her associations; the evidence showing that she associated with negroes, and especially with appellant and his family, on the same footing as if they were white people .... We do not believe the law of rape applies to a case like this, but was intended to protect idiots, imbeciles, and insane, —not persons who

naturally or from association have become depraved ....

*Id.* at 1049. Today's appellants would do well to forego reliance on the *Lee* opinion.

In *Williams,* the court found the evidence insufficient to meet the pre-*Sanchez* standard of mental deficiency. Testimony of a doctor and the prosecutrix's neighbors indicated that she was physically crippled, but of sound mind. She attended school for four years, could read, helped cook and clean, did not require supervision, attended parties, dated members of the opposite sex, and knew right from wrong. Once again, we are confronted with a much more severe degree of mental incapacity in this case, extending to intellectual, social and psychological functioning.

In *Harris,* the complainant was in school for seven years and had an I.Q. of 66. The State's own medical testimony revealed that she was able to distinguish right from wrong, and that resistance to the act was within her physical and mental capability. The evidence of inability to consent was weaker than in the present case. In any event, the reversal was predicated on the pre-*Sanchez* requirement that the deficiency equate to insanity.

In *Bradford* and *Smith,* the victims' conditions were unquestionably within the range contemplated by the rape statute. In the former, the complainant was eighteen, could not walk, could not feed herself, was unable to control bodily functions, and was equivalent to a one- or two-year-old in intellectual development. In *Smith,* the victim's mind was comparable to that of a two- or three-year-old child. She was unable to talk, and was confined to a nursing home where her condition was apparent to all professional and lay persons with whom she came in contact. Admittedly, the evidence in these cases was more substantial than in the case at hand. That is not to say, however, that a woman's condition must reach the *Smith* or *Bradford* degree of severity before she will be afforded the protection of Section 21.02(b)(4).

The facts of the instant case are more closely akin to those in *Sanchez.* In that case, the victim was in school only a few days of her nineteen years. Her intellectual age was estimated, by expert testimony, at six to seven years. As in the present case, she was not permitted to leave her home unaccompanied. The medical testimony, as to her comprehension of the act of intercourse and her ability to resist, was strikingly similar to the present case. The doctor doubted if she had a complete understanding of the sexual act or if she could really resist it.

■ In the present case, Dr. Whitworth testified that the complainant had an understanding of the physical act of intercourse and the possible physical consequence of pregnancy. She did not, however, have an understanding of the psychological, social and economic implications of the act. A limited understanding of the physical aspects of intercourse does not constitute an ability to "appraise the nature of the act," as required by Section 21.02(b)(4). The capability contemplated under the Penal Code is more extensive than this concrete range of understanding.

■ The complainant in this case had no problem-solving ability. She exhibited concrete thought with no power of abstraction. Dr. Whitworth testified that he asked the complainant, in various ways, why one should stay away from bad company. She was unable to provide any answer. When asked what she would do if lost in a forest, the complainant stated "she would call for her mother." From an evidentiary standpoint, these examples clearly support the verdict. From a conceptual standpoint, they demonstrate the exact type of mental state appropriately protected by Section 21.02(b)(4).

■ Under Section 21.09 of the Penal Code, extramarital sexual intercourse with a female under the age of seventeen constitutes rape of a child. Non-consent is not an element of the offense. The evidence indicated that the complainant's overall mental and social development was equivalent to that of a second-grade student. The only distinctions between the complainant and a

nine- or ten-year-old child are her chronological age and physical maturity.

In *Baldwin,* the court considered whether mental age would qualify an adult female prosecutrix for protection under the rape of a child statute. The court concluded that the existing legislation would not permit such treatment. It was that portion of the opinion, however, which culminated in the call for further legislation. The resulting 1887 Amendment of the Penal Code, and its statutory and judicial progeny, have not produced such a concept of criminal liability. Analogy to the rape of child provisions is, however, of assistance in analyzing the sufficiency of the evidence under Section 21.02(b)(4).

█ The complainant had an understanding of the physical nature of sexual intercourse and pregnancy. The same may be true of females in the age range of thirteen to sixteen. The latter are still protected by the rape of child statute. As with the complainant, their level of maturity does not, as a rule, permit a full appraisal of the nature of the act, including psychological, social and economic impact. The quantum of awareness is the same. The victim whose chronological age is under seventeen is presumed to lack the sufficient capacity to consent. The adult victim whose mental capacity is on an under-seventeen developmental level is not entitled to the presumption. Her incapacity is a matter of proof at trial. Once sufficient proof is offered to demonstrate that her mental functions are within that developmental range, she is entitled to the same protection from sexual depredation.

█ This construction of Section 21.02(b)(4) still provides adequate protection for the alleged offender. Section 1.02(2) of the Penal Code expresses an objective of giving fair statutory warning of what is prohibited by law. Under Section 21.09, the actor's knowledge that the complainant is under seventeen years of age is not an element of the offense. Her youth and physical development are presumed to provide overt notice of her incapacity to consent. Our construction of Section 21.02(b)(4) provides protection to the victim who is functionally as incapable of consenting as a minor. Her adult physical development may, however, not present sufficient notice to the actor to justify holding him criminally liable for the advantage which he has obtained as a result of her incapacity. This concept of criminal responsibility is adequately preserved by the statutory requirement that the actor know that mental disease or defect renders the female incapable of effectively consenting to the act.

█ The evidence in this case as to the complainant's mental, social, and psychological development was sufficient to support the jury's verdict under Section 21.02(b)(4). The limited nature of her understanding of sexual intercourse does not preclude her protection under that statute. Ground of Error No. One is overruled.

In Ground of Error No. Two, Appellant challenges the sufficiency of the evidence of his knowledge of the complainant's condition. This contention is without merit.

Prior to the day of the offense, the complainant's mother advised the Appellant of her daughter's mental retardation. He had come in contact with the complainant approximately six times prior to the act of intercourse.

Appellant points to testimony that the complainant appeared normal to other acquaintances. This assertion came only from the complainant. Dr. Whitworth testified that she had a higher level of esteem for herself than did her mother. It was for the jury to assess the weight of this testimony in assessing notice of her impairment. In light of the other evidence of her condition, it would be reasonable for the jury to conclude that her belief as to her outward appearance was more an expression of wishful thinking than of fact.

█ The testimony of the complainant's mother as to the express notice given the Appellant, the complainant's testimony and her demeanor on the stand, and the analysis provided by Dr. Whitworth provided a sufficient basis for the jury's conclusion that

the Appellant knew of the incapacity. Ground of Error No. Two is overruled.

The conviction is affirmed.