**Anastacio Hernandez GARCIA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 401–82.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 19, 1983.

Robin Norris, Adolfo Quijano, Jr., El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and R. Bradford Stiles, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

A jury found Anastacio Hernandez Garcia, appellant, guilty of violating V.T.C.A., Penal Code, Sec. 21.02(a), (b)(4).[1]

The El Paso Court of Appeals affirmed his conviction. See *Garcia v. State,* 659 S.W.2d 843 (Tex.App.—El Paso 1982). We will reverse the judgment of the Court of Appeals.

One of the ways an adult male can commit the offense of rape is if he has sexual intercourse with an adult female *who is not his wife, and he knows that the female is suffering from mental disease or mental defect, to such extent that she is incapable either of appraising the nature of the act of sexual intercourse, or of resisting it.* The female's condition, coupled with the male's *knowledge* of the mental defect or disease, substitutes for lack of consent by the female to the act of intercourse. See Sec.

21.02(a), (b)(4), supra. It is undisputed that the complainant did not have any mental disease, but because she had an intelligence quotient of slightly less than 70 she was deemed to be mildly retarded.

Whether an adult male *knowingly* engages in sexual intercourse with a mentally deficient adult female may or may not be an easy question to answer, because the female's condition may range from the obvious to not being readily noticeable.

Hon. W.A. Morrison, a member of this Court for over twenty-five years, pointed out the following in *Harris v. State,* 474 S.W.2d 706, 708 (Tex.Cr.App.1972):

> Indeed, he [the defendant] might have known he was doing something wrong, that he should not be having intercourse with [the complainant]. However, there is a difference between engaging in an illicit act of intercourse and engaging in that act knowing the woman is so mentally diseased [or defective] she cannot resist it.

In affirming appellant's conviction, the Court of Appeals stated, inter alia, the following:

> The testimony of the complainant's mother as to the express notice given the Appellant, the complainant's testimony and her demeanor on the stand, and the analysis provided by Dr. Whitworth [the psychologist who testified], provided a sufficient basis for the jury's conclusion that the Appellant knew of the incapacity.

After carefully reviewing the record, we find that we must disagree with the reasons the Court of Appeals gave for holding that the State's proof was sufficient to establish this element of the offense.

Notwithstanding what the Court of Appeals may have inferred from the testimony of the complainant, her mother, or the psy-

---

1. V.T.C.A., Penal Code, Sec. 21.02(a), (b)(4) reads as follows:

   (a) A person commits an offense if he has sexual intercourse with a female not his wife without the female's consent.

(b) The intercourse is without the female's consent under one or more of the following circumstances:

... (4) he knows that as a result of mental disease or defect she is at the time of the intercourse incapable either of appraising the nature of the act or of resisting it.

chologist who testified, our review of the record indicates that the complainant had all of the outward appearances of a normal appearing 26 year old female, and that any mental deficiency she might have had was obviously latent and unobtrusive to persons who did not have a close and personal relationship with her.

The complainant herself testified: "A lot of people [do not] know [that I am] retarded." She further testified that she never informed appellant she was retarded. The psychologist testified that she "had a higher level of esteem for herself than did her mother."

In rejecting appellant's assertion that the evidence was insufficient to establish that he had knowledge of the complainant's mental condition, the Court of Appeals also stated the following:

He [appellant] had come in contact with the complainant approximately six times prior to the act of intercourse."

This statement appears to indicate that appellant was in close personal contact with the complainant on at least six different occasions. This simply did not happen.

The mother of the complainant expressly testified through an interpreter that except for the day in question appellant only saw the complainant from a distance, which occurred when "he would pick me up and when he would drop me off [at my residence]." The mother also testified that she had ridden with appellant in his pickup truck approximately six different times to her place of business, which was adjacent to his place of business. Thus, the record clearly reflects that it was the mother, and not the complainant, who rode with appellant in his pickup truck, "approximately six times."

On cross-examination, the mother unequivocally testified that except for two occasions, on the day in question and on a day afterwards, the complainant never accompanied her to her place of business. Appellant's whereabouts on the second occasion are not reflected by the record.

The Court of Appeals also stated that the mother had in the past given appellant "express notice . . . of her daughter's mental retardation." This factual statement is supported by the record. However, other than the mother making the conclusory statement to appellant, that her daughter was mentally retarded, the record does not reflect whether the mother ever gave appellant any details why her daughter was mentally retarded, or how she was affected by the retardation.

Because the record is absolutely silent on the complainant's general appearance when she testified, whether she had any difficulty in answering the questions asked when she testified, and what her facial expressions, gestures, and mannerisms might have been when she testified, we are unable to understand how the Court of Appeals could have concluded, for appellate review purposes, that her "demeanor on the stand" could be used in making the ultimate decision whether appellant knew that the complainant was mentally deficient, to such extent that he was aware she was incapable either of appraising the nature of the act of sexual intercourse, or of resisting it, when he engaged in the illicit act of sexual intercourse.

In deciding that the evidence was sufficient to establish knowledge on the part of appellant, the Court of Appeals also appears to have placed much stock in the testimony of Dr. Whitworth, the psychologist who tested and evaluated the complainant for approximately one hour several months after the act of sexual intercourse had occurred.

If the information that Whitworth had gained from his interview and testing session with the complainant had been sufficiently demonstrated so that it could have been imputed to appellant, then it might be useful in making the ultimate decision on appeal whether appellant knew of the complainant's mental condition at the time he had sexual intercourse with her. However, that did not occur. We are thus unable to impute to appellant what Whitworth learned, such as the fact that the tests administered to the complainant reflect

that she had an I.Q. of less than 70; her understanding of what certain words mean; the responses she gave to certain questions asked; her mathematical ability; her literacy; etc., because there is not anything in the record which would permit us to do that.

In *Jackson v. Virginia,* 443 U.S. 307, 319, n. 12, 99 S.Ct. 2781, 2789, n. 12, 61 L.Ed.2d 560 (1970), the Supreme Court held that when it comes to an appellate court making the ultimate determination whether the evidence is sufficient to establish an element of a criminal wrong, it must answer the following question: "Whether, after reviewing [all] the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential element of the crime beyond a reasonable doubt." If the question calls for a negative answer, then the evidence is not sufficient to sustain the verdict of the trier of fact, and the conviction must be reversed.

In light of the record, we are compelled by law to hold that the State did not establish beyond a reasonable doubt that if the complainant was so mentally deficient that she was incapable either of appraising the act of sexual intercourse, or of resisting it, appellant knew this.

Therefore, the judgment of the Court of Appeals is reversed, and the cause is remanded to the trial court for it to enter a judgment of acquittal. See *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

ONION, P.J., and ODOM and W.C. DAVIS, JJ., dissent.

McCORMICK, Judge, concurring.

I write only to make it clear that this is not a case of "statutory rape." V.T.C.A., Penal Code, Section 21.02(b)(4), is not such a provision as the Court of Appeals' opinion mistakenly implies.

The Court of Appeals created an analogy between the victim's mental deficiencies and the rape of a child statute. Since the Court reasoned that "the only distinctions

between the complainant and a nine- or ten-year-old child are her chronological age and physical maturity," it concluded the analogy to the rape of a child provisions was of assistance in analyzing the sufficiency of the evidence under Section 21.02(b)(4). This incorrect conclusion led to the following faulty observation:

"The victim whose chronological age is under seventeen is presumed to lack the sufficient capacity to consent. The adult victim whose mental capacity is on an under-seventeen developmental level is not entitled to the presumption. Her incapacity is a matter of proof at trial. Once sufficient proof is offered to demonstrate that her mental functions are within that developmental range, *she is entitled to the same protection* from sexual depredation." (Emphasis added)

This observation is wrong and requires correction lest it find its way into the law.

Children under seventeen are not presumed by the law to be incapable of consent, their consent is simply irrelevant. Unlike rape, the offense of statutory rape is complete with or without the consent of the complainant. See *Calais v. State,* 624 S.W.2d 811 (Tex.App.1981); *McKinney v. State,* 505 S.W.2d 536 (Tex.Cr.App.1974); *Hindman v. State,* 152 Tex.Cr.R. 75, 211 S.W.2d 182 (1948). However, consent is still the crucial element to rape under Section 21.02(b)(4), supra, though it *may* be found lacking when the perpetrator *"knows* that as a result of mental disease or defect" the victim *"is* at the time of the intercourse incapable either of appraising the nature of the act or of resisting it." The statute prohibits rape without consent, not intercourse with a mentally deficient person.

Children are protected "from sexual depredation" as well as normal sexual relations under the rape of a child statute by reason of their chronological age, which as any parent can attest may or may not be indicative of their "developmental range." Simply because an adult's mental functions are within a particular developmental range, medically associated with a particular age

group, does not entitle the adult to the protection given a child.

TOM G. DAVIS, CLINTON and CAMPBELL, JJ, join in this concurrence.