**Modesto MARTINEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–81–00104–CR.**

Court of Appeals of Texas,
San Antonio.

May 26, 1982.

Discretionary Review Refused
Sept. 15, 1982.

Charles Campion, Don W. King, Jr., San Antonio, for appellant.

Bill White, Dist. Atty., Alan E. Battaglia, Asst. Dist. Atty., San Antonio, for appellee.

Before CADENA, C. J., and BUTTS and CANTU, JJ.

## OPINION

CANTU, Justice.

In a trial before a jury appellant was convicted of rape of a mentally diseased or defected woman, *see* Tex.Penal Code Ann. § 21.02(a)(b)(4) (Vernon Supp. 1981),[1] and punishment was assessed at eleven years.

Appellant in his first ground of error complains that the evidence was insufficient to sustain the conviction. He specifically asserts that there was insufficient evidence to prove lack of consent by the com-

---

1. Section 21.02 in pertinent part provides:

 (a) A person commits an offense if he has sexual intercourse with a female not his wife without the female's consent.

 (b) The intercourse is without the female's consent under one or more of the following circumstances:

 * * * * * *

 (4) he knows that as a result of mental disease or defect she is at the time of the intercourse incapable either of appraising the nature of the act or of resisting it.

plainant and knowledge on his part of complainant's mental defect.

■ The standard for reviewing the sufficiency of the evidence requires that the evidence be viewed in the light most favorable to the verdict and if there is any evidence which, if believed, shows the guilt of the accused, the verdict will be sustained. See *Rohlfing v. State*, 612 S.W.2d 598 (Tex. Cr.App.1981); *Banks v. State*, 510 S.W.2d 592 (Tex.Cr.App.1974). To dispose of appellant's first ground of error it is necessary to summarize the evidence adduced at the trial.

The record reveals that on September 10, 1977, the prosecutrix accompanied her mother, Mrs. Maria Valdez, to Zulema's bar located in San Antonio, Bexar County, Texas. There they met Zulema, the owner of the bar, with whom they sat and talked for approximately forty-five minutes. Feeling uneasy about prosecutrix's presence at the bar, Mrs. Valdez sought to return home and called for a cab on three different occasions. Because the efforts to secure a cab were unsuccessful, Mrs. Valdez asked Zulema if she had any friends who might give them a ride home. Zulema asked appellant, a patron of the bar, if he could drive Mrs. Valdez and prosecutrix home. Appellant agreed. Before accepting the offer of appellant, Mrs. Valdez ascertained that appellant was a friend of Zulema's and a good person.

During the ride home, the three of them rode in the front seat, with the prosecutrix in the middle. The prosecutrix started playing with appellant's C.B. radio at which time Mrs. Valdez advised appellant that the prosecutrix did not know how to talk on the radio. Appellant told the prosecutrix to say goodnight over the C.B., and prosecutrix complied. Upon reaching their house, Mrs. Valdez took the prosecutrix inside, where her 14-year old daughter and her 10-year old granddaughter were watching television. She instructed all three to go to bed and lock the doors. Mrs. Valdez asked appellant if he could give her a ride to another bar and appellant agreed. They proceeded to "Little Joe's." Mrs. Valdez testified that during the drive to "Little Joe's" appellant

asked her to go have a drink with him, that she declined and that upon reaching "Little Joe's" he tried to kiss her.

The prosecutrix's 14-year old sister testified that as they were preparing to go to bed, a car screeched to a halt in front of their house. She looked out and recognized the white car and the man driving as being the one who brought her mother and sister home about ten minutes earlier. She further testified that he yelled from his car that he was coming to pick up the girl he had just dropped off to take her back to her mother. He explained that her mother was at a dance and had requested that he return and pick up her daughter. The prosecutrix got dressed and left with appellant even though her sister, suspecting something to be wrong, had advised against going with him.

Mrs. Valdez arrived home a short while later and, discovering the prosecutrix gone, became frightened and called her son who in turn called the police. When the police responded to the call they were given a description of appellant and the car he was driving. The investigating officer testified that the call had come out as a kidnapping and that when he arrived at the residence he spoke with Mrs. Valdez who appeared very excited about her daughter.

The prosecutrix was found by her mother and brother the next day at approximately 12:00 noon, standing in front of one of prosecutrix's mentally retarded friend's house. Mrs. Valdez testified that her daughter was wearing the same outfit she had had on the night before, but that her slacks were bloody, she was dirty, she had bite marks on her neck, her hair was uncombed and she appeared frightened. When Mrs. Valdez approached her, prosecutrix started to cry.

Prosecutrix was taken home and from there she was taken immediately to Bexar County Hospital to be examined. The doctor who conducted the examination testified that he recalled the prosecutrix to be "somewhat mentally retarded and had come to this conclusion after conversing with her a short time." He noted that she had a hard time responding to the questions he

asked her. His physical examination of her revealed an abrasion on the posterior surface of the vulva. The test for semen and sperm conducted at the hospital resulted in a negative finding. However, the test run at the San Antonio police lab on her pants and vaginal swab proved positive for semen.

The testimony adduced from the prosecutrix's mother, brother and sister indicates that they suspected that there was something wrong with prosecutrix at a very young age. Prosecutrix was enrolled in a public school for about a week before she was transferred to a school for the mentally retarded, and on the advice of doctors, attended a special school for the retarded until she was 18-years old. She then trained at Goodwill Industries.

Prosecutrix never learned to read or write, could not count past ten, did not know how to exchange money or use a phone, did not know when she was born, had never been out alone, and had never dated nor been with a man. Her mother testified that she could dress herself, but that she had to be shown how to combine colors and that she could perform some household chores such as washing dishes, sweeping floors and making beds. Prosecutrix's sister testified that the prosecutrix played checkers, jacks and liked to jump rope. Her brother testified that he had tried to teach her how to dance but that she did "not really" know how because she was very uncoordinated. He had never seen her dance with anyone before, nor had he seen her play pool, and in his opinion was unable to play such a game.

The prosecutrix testified at trial, with the aid of an interpreter, and in response to questions, indicated that she was both five years old and twenty-five years old. She could not say her age but could only write it on the board. She was unable to write anyone's name. She stated that she cleaned the house, swept floors, mopped, made beds and hung out clothes, liked to play the games twister, bingo and cards, knew what street she lived on but not what city, did not know what day of the week it was, nor what month, and could recognize only the numbers one through six.

She identified appellant as the person who came to pick her up and stated that she left with him "because he said that [her] mother said for him to come for [her]." She testified that he took her to Monterrey Park where he took her pants off against her wishes. He told her to lay down and he sat on top of her and "what a boy has, he put it in [her]." After she put her pants back on, he took her to a bar where he drank three "Schlitz" beers.

After leaving the bar, appellant took her to an "apartment" with the number six on the door, where he locked the door behind them, told her to take a shower with him and helped her take off her clothes. She further testified that she felt afraid during this time. He told her to go to bed, forcing her down by grabbing both arms and laying her down backwards. Her testimony was that "what the man has he put in me," "he told me that we should go to bed so he could put it in me," "he put it in there" twice. She stated that it hurt, and she bled. They went to sleep and were awakened the next morning by a knock on the door, at which time appellant got up and paid the man at the door some money. According to prosecutrix, she got up, dressed, and went to the restroom where she noticed blood on her pants. From the motel, appellant took prosecutrix to San Pedro Park, where they got out of the car and talked.

After leaving the park, appellant put gas in his car and left her at her friend's house. Prosecutrix directed him there and did not have him take her home because she was "afraid her mother would beat her up."

On rebuttal, the State called Dr. McNichol, the psychiatrist for the Bexar County Courts, who had conducted a formal psychiatric evaluation of the prosecutrix. His clinical diagnosis indicated that she was in the moderate range of mental retardation with an I.Q. ranging from 55 to 65. He testified that her mental capacity was equivalent to that of a six to eight year old. The tests conducted on prosecutrix revealed that she could not count past eight, could not state her age, although she could write

it. She was able to put together some sensible phrases and sentences, but had very little general knowledge. She could write her name, but misspelled it. Dr. McNichol testified that her mental retardation was "manifestly obvious after about two minutes" and that she could not deceive a person as to her mental retardation unless that person was equally retarded. He further concluded that she had a passive personality and could be easily deceived by others. Her understanding of sexual intercourse was at best only primitive and in his opinion she was incapable of appraising the act of sexual intercourse and of resisting it. He further felt that the prosecutrix was incapable of conjuring up a detailed set of facts.

Appellant testified and offered the testimony of three witnesses who essentially advanced the opinion that the prosecutrix appeared and acted normal in their presence.

The first defense witness called was the owner of a bar who testified that appellant and prosecutrix had come to her bar that night and that she and prosecutrix had played pool together and that she had served her a few beers. She further stated that prosecutrix never expressed any fear or apprehension in her presence. Another defense witness testified that appellant and prosecutrix had arrived at his bar just as he was closing and that in speaking with prosecutrix he had noticed nothing peculiar about her, finding her to be "pretty lively." A third defense witness stated that appellant and prosecutrix came by her house on Sunday morning, ate breakfast and talked. The witness noticed nothing peculiar about the prosecutrix, who used the phone, was clean and acted as if "everything was okay."

The appellant took the stand and admitted having sexual intercourse with the prosecutrix on the morning of September 11 only. He denied having intercourse with her at Monterrey Park and stated that he did not remember whether they had intercourse that night in the motel room. Appellant testified that he did not know [2] that the prosecutrix was mentally retarded and that he saw nothing indicating that anything was wrong with her.

On appeal appellant complains that the evidence is insufficient to show that prosecutrix was so mentally defective as to be incapable of consenting and that he knew of her condition.

We do not agree.

Under prior law, Tex.Penal Code Ann. art. 1183 (1925), the female had to have been so mentally diseased as "to have no will to oppose the act of carnal knowledge, the person having carnal knowledge knowing her to be so mentally diseased." The Court of Criminal Appeals interpreted this language in Williams v. State, 125 Tex. Cr.R. 477, 69 S.W.2d 418 (1934) stating that mere mental deficiency was insufficient, the female must be so mentally deranged as to have no willpower to assent or dissent. Tex.Penal Code Ann. § 21.02(b)(4) (Vernon Supp.1981), in effect at the time of the commission of the instant offense, broadens the law's protection to cover mental defectives and focuses the test on the cognitive and physical elements to determine if the female consented. See Practice Commentary, Tex.Penal Code Ann. § 21.02 (Vernon 1974). The emphasis is on the female's ability to appraise the nature of the act or her ability to resist it. Thus, the question is whether the complainant in the instant case falls within the protection of the statute. Was her mental condition such that she was incapable of appraising the nature of the act or of resisting it?

▉ We find the evidence sufficient to support the jury's determination that complainant was a mentally diseased or defected woman within the meaning of the statute.

In addition to the testimony of the prosecutrix's family members who spelled out at

---

**2.** A review of appellant's testimony discloses that he did not know nor have knowledge of prosecutrix's mental condition. None of it supports a finding that he, through mistake, formed a reasonable belief about a matter of fact which would negate the culpability required under the act. At best, appellant's testimony amounts to a denial of the existence of an essential element of the State's case.

length the history of prosecutrix's mental deficiencies together with a list of her present abilities, the jury was favored with firsthand observation of the prosecutrix on the witness stand as she struggled to relate her version of the events with the aid of an interpreter. Furthermore, medical and psychiatric evidence showed prosecutrix's mental retardation to be manifestly obvious after only a short time spent in conversing with her. According to Dr. McNichol, prosecutrix could not deceive another person as to her retardation unless that person was equally as retarded. *Compare Harris v. State*, 474 S.W.2d 706 (Tex.Cr.App.1972) decided under prior law, [art. 1183, supra] where the evidence reflected that the prosecutrix who suffered from mental deficiencies could appear normal.

We hold that the prosecutrix, because of her mental defect, fell within the protection of Tex.Penal Code Ann. § 21.02(b)(4) (Vernon Supp.1981).

Additionally, our statute requires that the appellant must *know* the complainant to be mentally diseased or defected at the time of the act. In *Bradford v. State*, 477 S.W.2d 544 (Tex.Cr.App.1972) [3] the Court of Criminal Appeals held the evidence to be "sufficient to support a jury finding that defendant *should* have been aware that prosecutrix was so mentally diseased as to be unable to give consent." (emphasis added). In that case, the prosecutrix was an eighteen year old female who could not talk, eat, walk or control her bodily functions and whose mental age was described as being that "of a child from one to two years old". In *Sanchez v. State*, 479 S.W.2d 933 (Tex.Cr.App.1972) [4] the issue was again "whether the evidence in [that] case [was] sufficient to support the jury's determina-

tion that appellant *should* have been aware that [prosecutrix] was so mentally diseased as to be unable to give consent". (emphasis added). Again the Court of Criminal Appeals held the evidence to be sufficient to show that defendant knew of the mental defect it was revealed that defendant knew the mentally deficient prosecutrix and her family, that he had lived in the community for some time and that prosecutrix was known in the community to be mentally deficient.

The evidence in *Smith v. State*, 555 S.W.2d 747 (Tex.Cr.App.1977),[5] revealed that the prosecutrix was a forty-nine year old mentally retarded female who was unable to talk and whose mental age was characterized by witnesses as being that of a "two or three year old." The defendant worked as a maintenance man at the nursing home and had "played with" prosecutrix in the past. The court held that by such contact the defendant *must have known* that the prosecutrix was so mentally diseased or defective as to be incapable of appraising the act of sexual intercourse.

■ In the instant case, appellant admitted to being with prosecutrix for a period of time in excess of fourteen hours. In view of all of the State's evidence amply demonstrating the prosecutrix's manifestly obvious mental retardation, we find that the jury was entitled to believe that appellant knew that the prosecutrix was so mentally defective as to be unable to appraise the act of intercourse or to resist it. *Cf. Harris v. State, supra.*

■ The jury heard the testimony of all of the witnesses and the testimony of the prosecutrix and were able to observe her demeanor. The jury was in a much better position to determine these difficult

---

**3.** Conviction was under prior Tex.Penal Code Ann. art. 1183 (1925), which also required that the accused know of the victim's mental condition. Although Judge Odom's unfortunate use of words leads one to believe that Bradford was convicted under a less stringent test, i.e. "should have been aware", it is apparent from the jury charge quoted in the opinion that a conviction could be obtained only upon a finding that Bradford knew of the mental condition. 477 S.W.2d at 546.

**4.** Although the Court of Criminal Appeals continues to use confusing language, we interpret the opinion as indicating that the jury was required and did find that the accused knew of the victim's mental condition.

**5.** Again the Court of Criminal Appeals uses this confusing language, and again we interpret the opinion as indicating that the jury was required and did find that the accused knew of the victim's mental condition.

issues than is this court and their finding will not be disturbed where it is supported by the record. The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. Tex.Code Crim.Pro.Ann. art. 36.13 and art. 38.04 (Vernon 1979); *Esquivel v. State*, 506 S.W.2d 613 (Tex.Cr.App.1974). The jury may believe some witnesses and refuse to believe others and it may accept portions of the testimony of a witness and reject other portions. The jury here obviously chose to believe the State's witnesses.

Viewing the evidence in the light most favorable to the verdict, as we must, *Esquivel v. State, supra*, we hold it to be sufficient to support the jury verdict.

Appellant's second ground of error asserts that the trial court committed reversible error in denying his request to instruct the jury as to the defense of mistake of fact. He argues that because he and others[6] testified that the prosecutrix appeared normal and he thought she was capable of appraising the nature of the act and consenting to it he was entitled to have the jury instructed on this mistake of fact.

■ It is a fundamental proposition that wherever a defensive theory is presented by the record, the defendant is entitled to a distinct and affirmative presentation of that issue. *Campbell v. State*, 614 S.W.2d 443 (Tex.Cr.App.1981); *Misner v. State*, 610 S.W.2d 502 (Tex.Cr.App.1981); *Moon v. State*, 607 S.W.2d 569 (Tex.Cr.App.1980); *Garcia v. State*, 605 S.W.2d 565 (Tex.Cr.App.1980). An accused is entitled to an affirmative instruction on a defensive issue only if the issue is raised by the evidence. *Carrillo v. State*, 591 S.W.2d 876 (Tex.Cr.App.1979). In the absence of any evidence raising a defensive theory, the trial court does not err in failing to charge on that theory. *Carrillo v. State, supra*. The defensive theory relied upon by appellant on

appeal of the instant case is that he was mistaken as to complainant's mental condition in that she appeared normal to him and he thought she was capable of appraising the nature of the act and consenting to it. However, this defensive issue if raised at all, was raised only for the admitted act of sexual intercourse which he alleges occurred the morning of September 11, 1977, in the motel room.

■ The State relied for conviction and presented evidence of sexual intercourse on two occasions; once in Monterrey Park, alleged to have occurred the night of September 10, 1977, which appellant denied. The State further presented evidence of sexual intercourse in the motel room before appellant went to sleep. Appellant did not present a defense to this instance but simply stated that he did not remember. The State presented evidence and relied only upon these acts of intercourse in proving up its case. The defense raised by appellant to these acts was a denial and a nonadmittance. There was no evidence of mistake of fact presented as to the acts made the basis of the prosecution, nor do we think to the additional act admitted by appellant of which he alone had knowledge.

■ It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense. Tex.Penal Code Ann. § 8.02(a) (Vernon 1974). Had appellant introduced this defense to the acts of intercourse relied upon by the State to convict, appellant would have been entitled to an instruction on defense of mistake of fact. *Beggs v. State*, 597 S.W.2d 375 (Tex.Cr.App.1980); *Franklin v. State*, 106 Tex.Cr.R. 285, 292 S.W. 222 (1927). However, the trial court did not err in denying the charge on mistake of fact[7] since there was an absence of

6. It is immaterial that others labored under a mistake of fact such as would excuse appellant from criminal consequences. *Lasker v. State*, 573 S.W.2d 539 (Tex.Cr.App.1978).

7. The written requested charge submitted by appellant as denied by the trial court appears in the record with numerous interlineations and

additions so as to render it unintelligible. There are no court reporter notes of a hearing on the requested charge in the record to assist us in deciphering the nature of the request. In view of the ambiguous and legally incorrect presentation of the requested charge the trial court was justified in denying it on this basis alone. *Mutscher v. State*, 514 S.W.2d 905 (Tex.

any evidence raising this defensive theory. *See Hackbarth v. State,* 617 S.W.2d 944 (Tex.Cr.App.1981).

We have found no case, nor do we believe such a case exists, that permits a defense to be raised when the accused denies the commission of the offense charged but attempts to justify his conduct through the admission of another act which he claims occurred under circumstances that negated the kind of culpability required for commission of the offense. In the case of *Kimbro v. State,* 157 Tex.Cr.R. 438, 249 S.W.2d 919 (1952), the appellant, arrested for the offense of driving while intoxicated, denied that he had drunk anything prior to his apprehension and insisted he had become intoxicated by finishing off half a pint of whiskey after he was halted and while the officer was looking in the automobile. The Court of Criminal Appeals held that such a position did not raise a defense but rather constituted a denial of the truth of the charge. *See also Bearden v. State,* 487 S.W.2d 739 (Tex.Cr.App.1972); *DeHam v. State,* 389 S.W.2d 955 (Tex.Cr.App.1965); *Gilmore v. State,* 158 Tex.Cr.R. 534, 257 S.W.2d 300 (1953); *Sharp v. State,* 150 Tex. Cr.R. 169, 199 S.W.2d 159 (1946).

Similarly, in *Mayes v. State,* 162 Tex. Cr.R. 105, 282 S.W.2d 709 (1955) the appellant was charged with procuring a woman for the purposes of prostitution and by testifying in his own behalf denied that he had called a woman to come to a hotel room for the purpose of having sexual intercourse. Appellant admitted placing the call to the woman at the behest of an undercover police officer but claimed he did not know what the woman was called or that she went to the room for the purpose of sexual relations. The Court of Criminal Appeals held that a claim of lack of knowledge amounted to a denial of an essential element of the State's case and did not rise to the level of an affirmative defense.

■■■■ The denial of a defendant's requested instruction is not error where the requested instruction is merely an affirmative submission of a defensive issue which

Cr.App.1974); *Wickware v. State,* 488 S.W.2d

merely denies the existence of an essential element of the State's case. *Green v. State,* 566 S.W.2d 578 (Tex.Cr.App.1978); *Bearden v. State, supra; Kirkland v. State,* 162 Tex. Cr.R. 424, 285 S.W.2d 743 (1955); *Gilmore v. State, supra.* Appellant's testimony amounted to no more than a denial that he knew of the prosecutrix's mental condition and as such merely raised affirmatively a defensive issue constituting a denial of the existence of the essential element of knowledge. Under the circumstances appellant was not entitled to a charge on mistake of fact nor to an affirmative submission of his denial. *See Wickware v. State,* 488 S.W.2d 127 (Tex.Cr.App.1972); *Hamilton v. State,* 115 Tex.Cr.R. 96, 29 S.W.2d 777 (1930). Since the court's charge in the instant case required the jury to find knowledge on the part of appellant in order to convict, an affirmative submission on the issue was not required. *Wickware v. State, supra.*

We hold that appellant's testimony merely denied the commission of the offense charged and did not obligate the trial court to submit a charge on mistake of fact. *Chamberland v. State,* 170 Tex.Cr.R. 124, 338 S.W.2d 726 (1960). Appellant's second ground of error is overruled.

The concurring opinion would deny the defense of mistake of fact in all rape of mentally diseased or defected women cases by equating them to rape of children cases. The fallacy in this type of reasoning is the obvious failure to recognize essential elements of each offense. In rape of children cases under Tex.Penal Code Ann. §§ 21.-03(a)(5) and 21.09(a) knowledge or lack of knowledge plays no part in determining consent because the legislature has made consent immaterial. Contrariwise, Tex.Penal Code Ann. § 21.02(a)(b)(4) requires, as an essential element of the offense, that an accused know of the mental condition of the victim. Lack of knowledge or mistake of fact, therefore, becomes materially significant in establishing or negating culpable conduct under the statute.

127 (Tex.Cr.App.1972).

Until the legislature evidences its intent to ascribe strict liability to § 21.02(a)(b)(4) cases, we are unwilling to do so. Nor are we persuaded to do so simply because the victim is, upon expert reflection, said to possess the mental functioning of a mere child but the physical appearances of a mature female.

In his third ground of error, appellant contends the jury, after retiring to deliberate, received other evidence prejudicial to appellant which consisted of a misstatement of the law and which resulted in assessment of increased punishment.

 Appellant's amended motion for new trial challenged the jury's verdict on punishment as being the result of a quotient verdict. It did not complain of the jury receiving new evidence or misstatements of the law. The ground of error raised on appeal does not comport with the error raised in his amended motion for new trial. Therefore, it is not preserved for review on appeal. The error presented on appeal must be the same as the objection raised before the trial court. *Nelson v. State*, 607 S.W.2d 554 (Tex.Cr.App.1980).

However, even if it had been preserved, appellant's ground of error is without merit. At the hearing on the motion for new trial, four jurors testified. Juror Macecevic stated:

> [t]he reason we hit on eleven years, was there were a couple of people in there that were not quite sure because of one clause in the charge they gave us. They said that if the sentence was ten years or less it could be probated.... the jury was not clear if it could be probated with or without their permission ....

She further testified that as a collective body the jury determined that they did not want to grant probation. They did not want to take any chances on there being a probated sentence and they felt the eleven years would guarantee that probation could not be granted, either by the jury or by the court. However, Juror Macecevic testified that had she known that probation was a prerogative of the jury it would not have made a difference to her.

Juror Green testified that there was no confusion regarding probation. Juror Garza testified that they "didn't want to give him probation." He did state that it was unclear in his mind as to whether the defendant would get probation in the event he was given ten years or five years.

Juror Cortez also testified that he did not want to give defendant probation. He was unclear whether if in the event that defendant got less than ten years the jury could still assess punishment without the benefit of probation.

 Appellant argues that the jurors had a mistaken view of the application of probation to a sentence of ten years or less and that because of this many jurors agreed to a higher punishment. Appellant seems to be relying on Tex.Code Crim.Pro.Ann. art. 40.03(7) (Vernon 1979) which grants a new trial "where the jury, after having retired to deliberate upon a case, has received other evidence ...." Such "other evidence," the introduction of which would require a new trial, must have been introduced by a juror who professed to know the probation laws and such information must amount to misstatements of the law. *Beck v. State*, 573 S.W.2d 786 (Tex.Cr.App.1978).

 The testimony in this case does not show that the jury considered evidence not admitted. It does show that the jury may have been correctly informed that if they assessed a punishment of ten years or less the court could grant probation. Since this view and the statements made by the jurors was not a misstatement of the law, no reversible error is shown. *Martinez v. State*, 533 S.W.2d 20 (Tex.Cr.App.1976). *See Heredia v. State*, 528 S.W.2d 847 (Tex. Cr.App.1975); *Howard v. State*, 505 S.W.2d 306 (Tex.Cr.App.1974). It was the jurors prerogative to vote to assess a punishment which would prevent the appellant from receiving probation. They may not now impeach that verdict. *Martinez v. State*, *supra; Frias v. State*, 169 Tex.Cr.R. 549, 335 S.W.2d 765 (1960). No jury misconduct has been shown.

The appellant's fourth ground of error relates to trial court error in failing to properly pronounce judgment and sentence to reflect the offense of which appellant was convicted. The indictment alleged two counts: rape by force and threats and rape of one mentally incapable of resisting. After the close of the evidence the State abandoned count one of the indictment and went to the jury only on count two charging appellant with rape of one incapable of appraising the nature of the act and resisting it. The jury found appellant guilty of rape as submitted under this second count of the indictment.

 Notwithstanding this fact, the judgment and sentence both recite that appellant was convicted of "Rape by force and threats/rape *by* one mentally incapable of resisting." Where, as in the present case, this court has the necessary data and evidence before it for reformation, the judgment and sentence may be reformed on appeal. *Joles v. State*, 563 S.W.2d 619 (Tex. Cr.App.1978); *Vasquez v. State*, 477 S.W.2d 629 (Tex.Cr.App.1972).

Pursuant to our authority under Tex. Code Crim.Pro.Ann. art. 44.24(b) (Vernon Supp.1981), the judgment and sentence are reformed and corrected to reflect that appellant stands convicted of the offense of rape of one mentally incapable of resisting. Tex.Penal Code Ann. § 21.02(b)(4) (Vernon Supp.1981).

As reformed, the judgment is affirmed.

BUTTS, Justice, concurring.

I concur in the judgment. Yet, there is a matter left untouched by the majority opinion. Simply because mistake of fact may be a defense to a variety of prosecutions in Texas, must a trial judge be obliged to submit an instruction on mistake of fact to a jury, given suitable evidence of the issue, in a case such as the instant one? Or might the judge properly refuse to submit the defensive issue to the jury? The majority opinion states: "Had appellant introduced [sufficient evidence of] this defense to the acts of intercourse relied upon the State to convict, appellant would have been entitled to an instruction on defense of mistake of fact."

Texas has followed the majority law of this nation in statutory rape cases, Tex.Penal Code Ann. § 21.09 (Vernon Supp.1981), when mistake of fact is presented as a defense.

"Where the offense is in having connection with a child under the age of consent, belief on the part of the defendant that she was over the age of consent, and that, therefore, consent on her part would prevent the act from being criminal, cannot be shown. Connection with a child under the age of consent being criminal, one who has connection with a female which would, in any event, be unlawful, must know at his peril whether her age is such as to make the act a rape."

*Edens v. State*, 43 S.W. 89 (1897) (omitting authorities cited, many from other jurisdictions). The *Edens* court quoted Bish.St. Crimes, § 490:

"While ... no one is ever punishable for any act in violation of law whereto, without his fault or carelessness, he was impelled by an innocent mistake of facts, this rule does not free a man from the guilt of his offense by reason of his believing, on whatever evidence, that the girl is above the statutory age. His intent to violate the laws of morality and the good order of society, though with the consent of the girl, and though in a case where he supposes he shall escape punishment, satisfies the demands of society, and he must take the consequences."

*Manning v. State*, 43 Tex.Cr. 302, 65 S.W. 920 (1901) does not deviate from the same reasoning. Regarding the rape of a child, the Model Penal Code 213.6(1) provides: "When the criminality depends on a child's being below the age of 10, it is then, and only then, no defense that the actor believed the child to be older." That Code would permit a bonafide and reasonable mistake as to the age of the child to be recognized as a defense, mistake of fact, if the child is above the age of ten.

In the instant case the prosecutrix's chronological age was twenty-five. Unre-

futed and striking evidence showed her mental age to be "six to eight years at the most." The inescapable conclusion is that she, no more than a child of those tender years, did not possess the capable knowledgeability and judgment to resist the act of sexual intercourse.

Because the portion of the instant offense dealing with mental defect dwells within the "consent" part of the rape statute, Tex. Penal Code Ann. § 21.02(b)(4) (Vernon Supp.1981), it is argued this indicates that any defense of lack of consent, including mistake of fact, may be raised at trial. It may well be that the Legislature and not the courts should address the question.

The doctrine of mistake of fact or honest belief should have no application to this character of offense. The age-old rule in statutory rape cases should apply when the female's mental age is proven to be that of a mere child.