Affirmed and Memorandum Opinion filed August 9, 2007








Affirmed and Memorandum Opinion filed August 9, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00535-CR

____________

 

JEROME T. GREEN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 351st
District Court

Harris  County, Texas

Trial Court Cause No. 1054355

 



 

M E M O R A N D U M   O P I N I O N








Appellant, Jerome T. Green, pleaded not guilty to the State=s indictment for
sexual assault, and not true to an enhancement for a prior conviction for
felony Acarnal abuse@ in Arkansas.  A
jury trial was held, and at the conclusion the jury found appellant guilty. 
The trial court assessed punishment at life in prison.  Appellant complains of
the legal and factual sufficiency of the evidence to support the finding that
appellant knew the complainant was incapable of appraising the nature of the
act or of resisting the act as a result of a mental disease or defect.  He also
complains that the State failed to admit fingerprint evidence, and thus failed
to prove that appellant was the person in the enhancement conviction.  Finally,
he complains that the State failed to obtain a judicial finding that the
elements of the enhancement crime are substantially similar to the elements of
the present offense.  We affirm.

Factual
and Procedural Background

Complainant, Jamal Moore, was nineteen years old at the
time of the offense, and he suffers from moderate mental retardation.[1] 
His IQ of 42 gives him a mental capacity similar to a six to eight year old
child and puts him in the lowest ten percent of all retarded people, who are
already in the lowest three percent of the population as a whole.  Complainant
graduated from high school in the special education program, and, despite
needing close supervision, has worked most of his life doing physical labor and
performing janitorial and maintenance services.  At the time of the alleged
assault, complainant worked at Reliant Stadium for Aramark Concession Services.


On March 7, 2005, complainant went to Reliant Stadium to
work his shift during the Houston Livestock Show and Rodeo.  At the end of his
shift, complainant went into an employee bathroom to defecate.  The bathroom
contained a single toilet and sink and had a lock on the bathroom door rather
than a stall.  Complainant forgot to lock the door, and while he was in the
bathroom, appellant entered the bathroom and subjected complainant to oral sex
and anal penetration.  








Complainant reported the incident to a police officer
working outside the stadium, and was later taken by his father to a hospital to
have a rape exam performed on him.  Appellant was arrested and charged with
sexual assault, enhanced by an alleged prior penitentiary sentence from
Arkansas for carnal abuse, a first-degree felony offense.  Appellant pleaded
not guilty to the sexual assault charge, and the case was tried to a jury,
which found appellant guilty.  Punishment was tried to the court, which found
the enhancement paragraph true, and sentenced appellant to life in prison. 
Appellant filed a written notice of appeal on the same day the court assessed
punishment. 

Analysis

I.        Proof of
the Sexual Assault Was Legally and Factually Sufficient

A.      Standards
of Review

Evidence is legally insufficient if, when viewed in a light
most favorable to the verdict, a rational jury could not have found each
element of the offense beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 319 (1979); Jones v. State, 944 S.W.2d 642, 647 (Tex.
Crim. App. 1996). The jury is the exclusive judge of the credibility of
witnesses and of the weight to be given testimony, and it is also the exclusive
province of the jury to reconcile conflicts in the evidence. Jones, 944
S.W.2d at 647. Thus, when performing a legal‑sufficiency review, we may
not re‑evaluate the weight and credibility of the evidence and substitute
our judgment for that of the fact finder. Dewberry v. State, 4 S.W.3d
735, 740 (Tex. Crim. App.1999). We must resolve any inconsistencies in the
testimony in favor of the verdict. Curry v. State, 30 S.W.3d 394, 406
(Tex. Crim. App.2000).

In reviewing factual sufficiency of the elements of the
offense, the court of appeals views all the evidence without the prism of Ain the light most
favorable to the prosecution@ and sets aside the verdict only if it is
so contrary to the overwhelming weight of the evidence as to be clearly wrong
and manifestly unjust, or if the verdict is against the great weight and
preponderance of the evidence. Marshall v. State, 210 S.W.3d 618, 625
(Tex. Crim. App. 2006).  In reviewing factual sufficiency we are permitted to
substitute our judgments for those of the jury on questions of weight and
credibility, but only to a Avery limited degree.@  Id.  








B.      Evidence
Was Legally and Factually Sufficient to Show Appellant Knew that As a Result of
Mental Disease or Defect Complainant Could Not Appraise the Nature of the Act
or Resist It

Appellant argues that the evidence at trial was legally and
factually insufficient to show that he knew the complainant was incapable of
appraising the nature of the act or resisting it as a result of mental disease
or defect, as required by the Penal Code.  See Tex. Pen. Code ' 22.011(b)(4) (stating
that in order to show lack of consent under section 22.011(b)(4) of the Texas
Penal Code, the State must prove that Athe actor knows
that as a result of mental disease or defect the other person is at the time of
the sexual assault incapable of appraising the nature of the act or of
resisting it@).  First, we consider whether the State showed that
complainant could not appraise the nature of the act or resist it.  

1.       Evidence
that Complainant Could Not Appraise the Nature of the Act Is Sufficient

a)       Legal
Sufficiency

Dr. Mann, a psychologist practicing in the area of mental
retardation, testified that he did not believe complainant was capable of
making an informed decision regarding sex because he does not have the
cognitive skills to understand the long-range consequences of his actions, such
as the risk of sexually transmitted diseases or pregnancy.  Appellant claims
that this testimony is not sufficient to show incapacity to appraise the nature
of the act because the statute does not require Ainformed consent.@  We disagree.  








Appellant does not cite any cases, nor can we find any,
that define what is meant by Athe nature of the act@ in the statute. 
Dr. Mann=s testimony
reveals, not that complainant was uninformed of the potential consequences of
sex, but that he could not appreciate them with his limited cognitive
facilities.  Clearly this testimony reveals that complainant was incapable of
appraising  certain highly significant aspects of the sexual act.  We see no
need to read the statute to say that a complainant must be unable to understand
anything about the sexual act.  Evidence that a complainant cannot
understand the consequences of the sexual act is probative of whether the
complainant could appraise the Anature@ of the act.  Therefore,
based on Dr. Mann=s testimony alone, the jury could have
found complainant incapable of appraising the act. 

 Moreover, the jurors also saw complainant take the stand
and were able to judge for themselves from his manner of speech, his demeanor,
and his testimony whether he was capable of appraising the sexual act.  This is
also evidence, sufficient to overcome a legal sufficiency challenge, that
complainant could not appraise the sexual act.  See Wootton v. State,
799 S.W.2d 499, 501B02 (Tex. App.CCorpus Christi
1990, pet. ref=d); Martinez v. State, 634 S.W.2d 929, 934B35 (Tex. App.CSan Antonio 1982,
pet. ref=d).  

b)       Factual
Sufficiency

In his factual sufficiency argument, appellant points to
evidence that the complainant is sexually active with women.  This evidence
came from complainant=s father, who said he believed complainant
had been sexually active with women, and from social worker Nicole Drake, who
said complainant had told her he had been with women, but she could not confirm
it.  Appellant also points to Dr. Mann=s testimony that
complainant has a similar concept of right and wrong as most people, but just a
little less complex.  Finally, appellant points out that complainant had Aconsiderable
street knowledge,@ which demonstrates that he could appraise
the nature of the act.








Appellant does not elaborate on what street knowledge is
germane to complainant=s appraisal of the sexual act.  Appellant
cites to the record, but presumably to the wrong page, since the cited page
says nothing about street knowledge.  Nicole Drake testified that complainant
had considerable street knowledge, but she did not elaborate on this
statement.  It is true that complainant used coarse, Astreet@ language to describe
the sexual assault, and it is also true that he purported to know what
homosexuals were, and that he did not like them.  However, Dr. Mann testified
that complainant would mimic words and actions that he found appropriate from
people with whom he spent time.  Likewise, Nicole Drake testified that
complainant mimics the behavior of others.  Therefore, the jury could have
found that any course language or opinions regarding sexuality were the product
of his mimicking behavior, rather than an indication that he could appraise the
nature of a sexual act. 

Appellant=s argument that complainant has a similar
concept of right and wrong as non-retarded individuals does not offer much
proof of his ability to appraise the nature of a sexual act.  Whether or not he
has the same concept of right and wrong has nothing to do with complainant=s capacity to
understand the nature of a sexual act.  To say that once he understands the
event he would judge it the same way a non-retarded person would is not the
same as saying complainant has the ability to understand the event the way a
non-retarded person does. 

          The
evidence that complainant may have had sexual relations with women would be
some evidence that he could appraise the nature of a sexual act, but it is not
conclusive.  The jury would be free to disbelieve any evidence that complainant
had been intimate with a woman.  See Margraves v. State, 34 S.W.3d 912,
919 (Tex. Crim. App. 2000) (AThe jury may choose to believe some
testimony and disbelieve other testimony.@).  The jury would
also be free to believe that any sexual encounters with women would not have
made him capable of appraising the nature of a homosexual act.  Furthermore,
even if complainant had been intimate with a woman, it is not conclusive
evidence that he understands the nature of the sexual act in the manner
contemplated by the statute.  If the word Anature@ in the statute
means ramifications and consequences in addition to the mechanics of the act,
there was evidence that complainant did not understand the nature of the act, regardless
of whether he had been intimate with a woman.  








In short, appellant asks us to reweigh the evidence on this
close issue.  However, we cannot usurp the role of the jury to such a degree.  See
Marshall, 210 S.W.3d at 625.  Factual sufficiency review is barely
distinguishable from legal sufficiency review.  Id.  We may only find
evidence factually insufficient if it is shown that the verdict is manifestly
unjust or against the great weight and preponderance of the evidence.  Id.  We
hold that the evidence was factually sufficient to support a finding that
complainant could not appraise the nature of the act.  

2.       Evidence
Complainant Could Not Resist Was Sufficient

Appellant also attacks the sufficiency of the evidence that
complainant could not resist the sexual act.  We hold that the evidence of this
prong was both legally and factually sufficient.

a)       Legal
Sufficiency

There was testimony from Dr. Mann that complainant had the
mental ability of a six to eight year old child.   He testified that retarded
individuals generally, and complainant specifically, did not have the mental
resources to deal with a change to his routine, and that individuals like the
complainant, whenever faced with something like an assault, would need time to
think about whether what was done to them was right or wrong.  He also
testified that in his opinion, complainant would be at a loss as to how to
respond to a sexual advance from someone he perceived as being more powerful or
having more authority than him. 

When complainant testified about the assault, he said that
during the encounter he was hurt and crying.  He testified that he thought
appellant was stronger than he, and that he did not say anything when appellant
walked in the bathroom because he was scared.  This testimony would allow a
rational jury to conclude beyond a reasonable doubt that complainant=s mental defect
rendered him unable to resist appellant=s sexual
advances.  See Jones, 944 S.W.2d at 647.  

b)       Factual
Sufficiency








Appellant argues that the evidence of complainant=s inability to
resist is insufficient in light of other evidence that complainant had fought
with people in the past, that complainant would think of physically defending
himself first in a situation where he thought he could overpower the assailant,
and that if someone was treating complainant in a manner he considered wrong, it
would aid him in stopping the attack.  However, the jury also heard evidence
that if complainant thought his attacker was more powerful than he, complainant
would not know what to do.  

Appellant=s evidence does not render the verdict
clearly wrong and unjust or show that it is against the great weight and
preponderance of the evidence.  See Marshall, 210 S.W.3d at 625.  It
actually does not even contradict the verdict.  The jury could have fully believed
the facts relied on by appellant.  However, if they also believed that
complainant thought appellant was stronger than him, the jury could have still
reasonably believed that complainant was unable to resist due to mental disease
or defect.  Therefore, the evidence was factually sufficient to support a
finding that complainant could not resist appellant=s sexual
advances.   

3.       Evidence
Was Legally and Factually Sufficient to Show Appellant=s Knowledge

a)       Legal
Sufficiency

Appellant also claims that there was no evidence that he knew
that complainant=s mental disease or defect would prevent
him from appraising the act or resisting.  See Tex. Pen. Code ' 22.011(b)(4).  We
disagree.  The psychologist, Dr. Mann, testified that complainant operated at
the level of a six to eight year old.  The social worker, Nicole Drake,
testified that his mental abilities were Ano more than
elementary.@  In fact, complainant=s level of
intellect was so low, that it was immediately apparent to all who met him that
he was retarded.  Both police officers who had dealings with complainant in
investigating this case testified that his mental retardation is obvious upon
meeting him.  Ms. Drake and complainant=s father both also
testified that his condition is immediately evident. 








Appellant had talked to complainant before the day of the
incident.  In fact, the evidence shows that appellant had touched, grabbed, and
harassed complainant at work.  Complainant testified that he saw appellant
everywhere he went.  This evidence, coupled with the evidence that complainant=s moderate mental
retardation is immediately evident, provides enough proof for a reasonable jury
to conclude beyond a reasonable doubt that appellant knew the complainant could
not appraise a sexual act or resist sexual advances.  See Smith v. State,
555 S.W.2d 747, 749 (Tex. Crim. App. 1977); Sanchez v. State, 479 S.W.2d
933, 941 (Tex. Crim. App. 1972); see also Cruz v. State, No.
14-98-01231-CR, 2000 WL 1289347, at *2 (Tex. App.CHouston [14th
Dist.] Sept. 14, 2000, no pet.) (not designated for publication).

b)       Factual
Sufficiency

Appellant does not point to any evidence in the record that
would tend to show he did not know that complainant could not resist the act or
appraise its nature because of complainant=s mental defect. 
The only evidence that would tend to rebut this finding is evidence from
complainant=s father that he acts like a person between the age of
ten and thirteenChigher than the estimates of six to eight
and elementary age, given by Dr. Mann and Nicole Drake.  Also, complainant=s father testified
that complainant looked physically normal. 

This evidence, however, once again does nothing more than
present a question of weight of the evidence.  The jury could choose which
estimate of complainant=s mental age to believe.  Moreover, the
jurors were favored with testimony by complainant himself and were able to see
for themselves both how manifest and how profound complainant=s retardation
was.  An appellate court may not reweigh the evidence and set aside a verdict
just because it thinks a different result is more reasonable.  See Watson v.
State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  We cannot say that the
verdict was manifestly unjust or against the great weight and preponderance of
the evidence. 

Having found the evidence both legally and factually
sufficient, we overrule appellant=s challenges to
the sufficiency of the evidence showing that appellant knew that because of
mental disease or defect, complainant was unable to appraise the nature of the
act or resist. 








C.      Evidence
Was Factually Sufficient to Show Appellant Had Sex With Complainant

Even though the wording of his second issue on appeal
attacks the factual sufficiency of only the evidence supporting the consent
portion of the crime, the argument in support of this issue seems to also raise
an issue of factual sufficiency of the evidence supporting the finding that a
sexual act took place at all.  Appellant points to a great deal of evidence to
support the proposition that he did not even have sex with complainant, much
less non-consensual sex.

1.       Appellant
Points to Evidence Impeaching Complainant=s Credibility

First, appellant points to evidence that complainant had a
motive to falsely accuse complainant of a sexual assault.  This includes
testimony from complainant that appellant bothered him at work, that his boss would
do nothing about it, that he knew the police would be able to stop appellant
from bothering him, and that he disliked gay men.   Appellant also points to
evidence that complainant had twice previously accused others of sexual
assault.  On one occasion complainant changed his story several times, and
neither accusation resulted in charges being filed.  Appellant also mentions
that complainant likes to tell people he is on probation even though he is not,
and that the area around the bathroom was crowded with people, yet complainant
did not tell any of them about the assault immediately after it occurred. 








However, as with other evidence appellant has relied on in
this appeal, this evidence was tempered by other evidence in the case.  Some
evidence at trial showed that complainant may not have known that he was not on
probation, and other evidence showed that he mimics those around him.  There
was also testimony that complainant had been told to contact police if he
needed helpCnot stadium security guards.  Although no testimony
rebutted the false accusations complainant made in the past, the jury heard
complainant testify, and was free to believe him or not.  The court must afford
due deference to a jury's determinations in a factual sufficiency review.  Johnson
v. State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000).  The jury found
complainant credible, even after hearing the above impeaching evidence, and we
do not have sufficient justification to disturb the jury=s finding on
appeal.  See Marshall, 210 S.W.3d at 625.

2.       Appellant
Points to Lack of Physical Evidence of Sexual Assault

Appellant also complains of a lack of hard physical
evidence that a sexual assault occurred.  He points to evidence that he was not
seen on the stadium=s video camera, no DNA evidence or
forensic evidence supports that anal intercourse took place, no sperm was found
on the rectum, thigh, or underwear of complainant, an attempted kiss could have
been the source of appellant=s DNA in complainant=s mouth, and he
claims that complainant=s version of events is physically
impossible.  However, the evidence that a sexual assault did occur is
substantial.  The complainant himself testified to the sexual assault.  Appellant=s DNA was present
in complainant=s mouth and on complainant=s penis.  There
are individuals that could be appellant and complainant on the video
surveillance tape of the area outside the bathroom.  There was testimony from
the nurse who performed the rape exam that the fact complainant had defecated
shortly before the assault could have contributed to the lack of forensic
evidence of a sexual assault.  There was testimony from Dr. Mann that
complainant was behaving appropriately for someone who had been the victim of a
sexual assault.  Testimony from complainant=s father indicated
his story had been consistent since the time of the alleged rape. 

Once again, this is a situation in which the jury weighed
the evidence that showed rape and the evidence that there was no rape, and made
its determination that a rape in fact occurred.  The fact finder is the sole
judge of credibility of witnesses and weight of evidence, and we must employ
appropriate deference to avoid substituting our opinion for that of the fact
finder.  Johnson, 23 S.W.3d at 7.  

3.       Appellant
Attempts to Show Insufficiency by Distorting the Record

At several points in his factual insufficiency argument,
appellant also tries to show factual insufficiency by citing the record for
evidence that is not contained therein.  Appellant argues that the police had a
hard time pursuing charges and it was complainant=s persistence that
got the charge filed.  Appellant fails to mention that this statement by
complainant=s father was not in reference to the sexual assault,
but to an incident where complainant had something stolen from him at a bus
stop.  Appellant takes another line of complainant=s father=s testimony out of
context, when the father said that he did not want to pursue charges, but
complainant persisted.  Again, complainant=s father was
talking about pursuing charges for the bus-stop theft.  The statement was not
in reference to the sexual assault.  

Similarly, appellant argues that complainant=s father Ahad questions
about the losses his son claimed.@  This is not in
the record either.  Complainant=s father testifies, on the page of the
record cited by appellant, that with disabilities it is hard to provide solid proof
to police so that they can pursue charges, and that he is accustomed to letting
things like theft fall by the wayside because of this difficulty of proof.  He
certainly never testified that he did not believe that things were stolen from
his son, or that he otherwise doubted complainant=s truthfulness.

Appellant argues that complainant did not phone his father
that night after the incident.  The page cited by appellant reflects no such
thing, and the record clearly shows that police contacted complainant=s father on the
night of the assault after complainant reported it to police.  Thus, appellant=s statement, while
technically true, misrepresented the issue of whether complainant spoke to his
father on the night of the assault. 








At one point in his brief, appellant invents evidence that
if complainant had screamed, security guards in the area could have assisted
him.  There is nothing in the record about what security guards in the area
could or could not have heard from their positions. Clearly, none of this
misstated evidence is actually in the record, and, therefore, it cannot be
included in our factual sufficiency review.  See Johnson, 23 S.W.3d at
8. 

The evidence that appellant relies on which is not
misrepresented is also insufficient to show factual insufficiency.  As stated
above, appellant has done nothing more than point out issues of credibility and
weight of the evidence.  We cannot usurp the jury=s role and reverse
their decision unless it was clearly wrong and unjust or against the great
weight and preponderance of the evidence.  See Marshall, 210 S.W.3d at
625.  Although we admit this case presented a close factual issue, we do not
think the jury=s determination was clearly wrong and unjust.  To the
extent it was raised, we overrule appellant=s factual
sufficiency challenge to whether a sexual assault occurred.  

II.       Evidence
Was Sufficient to Prove Appellant Was the Person in the Enhancement Conviction

In his third issue, appellant complains that the proof is
insufficient to show that appellant is the person in the enhancement conviction
because appellant=s fingerprints were not admitted into
evidence, and no pictures were included with the enhancement judgement,
sentence or fingerprint card.  It is unclear whether appellant is attacking the
legal or factual sufficiency of the evidence.  Therefore, utilizing the
standards of review from Section I above, we will address both.  See, e.g.,
Burns v. Rochon, 190 S.W.3d 263, 267 (Tex. App.CHouston [1st
Dist.] 2006, no pet.) (addressing both factual and legal sufficiency when it
was unclear from appellant=s issue which he was challenging); Dever
v. State, No. 14-99-01151-CR, 2000 WL 1591120, at *1 n.1 (Tex. App.CHouston [14th
Dist.] Oct. 26, 2000, pet. ref=d) (not designated for publication)
(same).








Appellant cites Davis v. State, 321 S.W.2d 873 (Tex.
Crim. App. 1959) for the proposition that the State=s proof of
identity was lacking.  However, Davis provides no such authority.  See
Davis, 321 S.W.2d at 874B75.  It simply states that when an expert
has testified that the accused=s fingerprints match those pertaining to a
prior conviction, and there is testimony that photographs attached to the
enhancement judgments and sentences appear to be the defendant, such evidence
is sufficient to prove prior convictions.  Id.  It does not state that
all these steps must be taken in order to prove the identity of a defendant in
an enhancement conviction.  See id.

The Court of Criminal Appeals has held that prior
convictions Amay be established by certified copies of a judgment
and a sentence and authenticated copies of the Texas Department of Corrections
records including fingerprints, supported by expert testimony identifying them
as identical with known prints of the defendant.@  Beck v. State,
719 S.W.2d 205, 209 (Tex. Crim. App. 1986).  This is precisely the procedure
followed by the State here.  A fingerprint expert from the Harris County
Sheriff=s Department
testified, without objection, that fingerprints he took from appellant matched
the fingerprints attached to the prior judgments.  The admission of the prior
judgments, and the accompanying fingerprint cards, supported by the expert=s testimony,
provided the required evidence showing that appellant was the person who
committed the crime alleged in the prior judgment.  See id.;  see
also Cleveland v. State, 814 S.W.2d 140, 142 (Tex. App.CHouston [14th
Dist.] 1991, no pet.).  

Viewed in the light most favorable to the verdict, the
State=s evidence would
clearly allow a finding beyond a reasonable doubt that appellant was the person
convicted in the enhancement conviction.  See Jones, 944 S.W.2d at 647. 
Appellant did not cross-examine the fingerprint expert, or offer any proof that
would rebut his finding that appellant was the person in the enhancement
conviction.  The finding was not clearly wrong or unjust or against the weight
and preponderance of the evidence.  See Marshall, 210 S.W.3d at 625.  We
overrule appellant=s complaint that the evidence linking him
to the enhancement conviction was insufficient.

III.      No Error
in Not Including a Conclusion of Similarity in the Record 








Besides his legal and factual sufficiency issues, appellant
presents a fourth issue, which argues that the enhancement in this case is
invalid because there is no Afinding@ on the record of
substantial similarity as required by the statute.  See Tex. Pen. Code '
12.42(c)(2)(B)(v).  

The statute provides that a defendant shall be punished by
imprisonment in the institutional division for life if he is convicted of one
of several sexual offenses after previously having been convicted of one of
several sexual offenses.  See id.  The pertinent portion of the statute
provides that the prior enhancing conviction can be under one of the enumerated
Texas statutes or Aunder the laws of another state containing
elements that are substantially similar to the elements of [one of the
enumerated Texas offenses].@  Id.  

None of the cases cited by appellant support appellant=s contention that
the trial court must announce on the record that he has concluded the statutes
are sufficiently similar before pronouncing a defendant=s sentence.  See Hardy
v. State, 187 S.W.3d 232, 235B37 (Tex. App.CTexarkana 2006,
pet.  ref=d);  Hulsey v. State, No. 06-03-00122-CR, 2004
WL 2002579, at *2B3 (Tex. App.CTexarkana Sept. 9,
2004, pet. ref=d) (not designated for publication); Cross v. State,
114 S.W.3d 92, 99B100 (Tex. App.CEastland 2003), aff=d in part and rev=d in part on other
grounds, 144 S.W.3d 521 (Tex. Crim. App. 2004).  

Hardy is similar to this case in that the court took
judicial notice and made the determination of substantial similarity to a
California offense off the record.  Hardy, 187 S.W.3d at 236.  The court
of appeals in Hardy said that these actions were implicit in the fact
that the court told the defendant and State that if the jury found the enhancement
true, the court would impose a life sentence.  Id.  This case is
similar, although here the court, rather than the jury, decided the truth of
the enhancement allegations.  In any event, the court impliedly found that the
Texas and Arkansas statutes were substantially similar when it sentenced
appellant to life in prison.  Because the court=s finding was
implied, it need not have been expressly stated in the record.  Appellant=s fourth issue is
overruled.  

Conclusion

Having overruled each of appellant=s four issues, we
affirm the judgment of the trial court. 

 

 

/s/      Wanda McKee Fowler

Justice

 

Judgment rendered
and Memorandum Opinion filed August 9, 2007.

Panel consists of
Chief Justice Hedges and Justices Fowler and Edelman.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 









[1]  An average IQ is 100 and a person with an IQ below 70 is considered
mentally retarded.