**Affirmed as Modified and Opinion Filed February 14, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00930-CR

### KEITH DWAYNE WILLIAMS, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the Criminal District Court No. 3
### Dallas County, Texas
### Trial Court Cause No. F12-00221-J

## OPINION

Before Justices FitzGerald, Lang, and Fillmore
Opinion by Justice FitzGerald

A jury convicted appellant of aggravated sexual assault of a disabled person and the trial court assessed punishment at twenty-five years' imprisonment. In a single issue on appeal, appellant asserts the evidence was insufficient to prove that appellant knew of the victim's mental deficiency, and as a result of the victim's disability, she could not appraise the nature of the sexual act or resist it. Finding no reversible error, we modify the court's judgment, and as modified, affirm.

## BACKGROUND

Lisa White is the mother of the complainant, twenty-five year old Rita, and four other children. Rita was diagnosed with mild mental retardation when she was four to five years old. Rita and three of White's other children lived with White at the time of the offense. One of these

children, Anita, is Rita's guardian. Anita is unable to work because she cares for Rita twenty-four hours a day. Rita cannot be left alone, and she gets lost when she leaves the house. She does not drive, and is unable to work. Rita plays sports with Special Olympics, and attends activities with other children with similar mental abilities. White explained that Rita attended special-needs classes in high school and received services from MetroCare for ten years. MetroCare helped teach Rita how to live, and showed White a different approach to teaching Rita than she used with her other children because Rita is "different or special."

White became acquainted with appellant when Rita was ten or eleven years old, and then did not see him again for four or five years. When they became reacquainted, the relationship eventually turned romantic and White and appellant began dating. Appellant would occasionally stay at White's house. On these occasions, Rita and Anita were around. White, appellant, and the children would engage in family activities, such as watching movies and bowling.

In March 2011, White was out of town for five to six days chaperoning an event for one of her other daughters. Anita remained home to care for Rita. Appellant was not authorized to stay at White's home, but she did allow him to use the car to attend a job interview. Appellant was also supposed to check on the children in case they needed to go to the grocery store. At about 5:00 a.m. on the morning she was scheduled to arrive home, White received a "weird" text message from appellant that stated "Are you gonna press charges on me?" White did not understand, so she attempted to call appellant, but she was unable to reach him.

Appellant was supposed to pick White up from the airport when she arrived home, but White could not locate him. Appellant called her later, and he and White had dinner and then went out. When White arrived home later that night, Rita told her that she needed to talk to her, and revealed what had transpired with appellant. White was angry and frustrated, and contacted a

couple of hospitals that told her they did not handle rape cases. By that time, she was tired, and went to bed. The next morning, White took Rita to Parkland hospital.

Rita testified at trial. She described an occasion when she and appellant walked to the park and appellant pulled her pants down and then pulled his pants down. Rita stated that appellant "was on top of [her]." His private part touched the outside of her private part, and it touched the inside of her private part. Rita testified that it hurt. Then, they walked home and Rita took a shower because that is what appellant told her to do.

Rita described another occasion when she and appellant were at her house on the bed in her mother's room. Appellant pulled her pants down and "put a condoms on," and they "had sex in that room." Rita testified that she did not say anything while this was happening, and she did not want it to happen. When asked to describe the meaning of the word "sex," Rita explained that it is when private parts rub together. She further testified that sex is what occurred in her mother's bedroom that day, and appellant put his penis in her private part. Her mother was in Florida at the time.

Officer Glenn Lang interviewed Rita at the hospital. Rita was with Anita and her mother, and was crying and distraught. Rita was shy, quiet, and difficult to understand. Lang reported that she mumbled, and he had to get her to repeat things he did not understand. Lang testified that Rita "did not seem quite right like she was all there."

White did not speak with appellant after she took Rita to the hospital, but he tried to contact her by text and telephone on numerous occasions. The State also introduced into evidence two letters that appellant wrote to White. One letter stated, in pertinent part, "I just made a wrongful decision getting involved with Rita, whether we had sex or not." The letter subsequently stated, "Now, I do understand that what we did was morally wrong . . . but you were hardly there whenever I were at home . . . I do want you to know that I never wanted any

involvement to happen, but things just started happening, but I never forced anyone to do anything with me that they would or won't do . . . I wanted you to pay more attention to me." The second letter said, among other things, "I'm very, very sorry for what happened between me and Rita."

An investigator for the Dallas County District Attorney's office testified he obtained jail calls appellant made from the jail. Portions of these calls were played for the jury. In these calls, appellant describes Rita as a "mental slow person" and as having a "mental state." Appellant also admits to engaging in some "foreplay" with Rita. He insists his conduct with Rita was not criminal because "she ain't in a wheelchair . . . [with] tubes hanging out her butt."

A special education director from the school Rita attended testified that Rita was placed in modified courses, and her curriculum was lowered to be commensurate with her functioning level. Rita's IQ is 53, which is considered a "deficient range."

After hearing all of the testimony, the jury found appellant guilty of aggravated sexual assault of a disabled person.[1] Appellant pleaded true to the enhancement allegation, and stipulated to five prior convictions for other offenses. The trial court assessed punishment at twenty-five years' imprisonment. This appeal followed.

## ANALYSIS

In a single issue, appellant argues the evidence is insufficient to establish that, as a result of mental disease or defect, the complainant was incapable of appraising the nature of the act or resisting it. We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.). Under the *Jackson* standard, we review all of the evidence in the light

---

[1] In the same proceeding, appellant was tried and acquitted of two charges that he sexually assaulted the complainant by penetrating her female organ with his sexual organ.

most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury's role as the sole judge of the witnesses' credibility and the weight their testimony is afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the fact finder's duty to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

To prove the charge of aggravated sexual assault of a disabled individual, the State must prove beyond a reasonable doubt that the defendant "intentionally or knowingly cause[d] the penetration of the sexual organ of another person by any means, without that person's consent and the victim is a disabled individual." TEX. PENAL CODE ANN. § 22.021(a)(2)(C) (West 2011). Consent, in the context of a sexual assault, is not effective "if the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or resisting it." *Id*. § 22.011(b)(4). A "disabled individual" is a person over the age of fourteen who, because of age or physical or mental disease, defect, or injury, is substantially unable to protect herself from harm or to provide food, shelter, or medical care for herself. *Id*. § 22.04(c)(3).

Appellant admitted to engaging in foreplay with Rita, but claims it was consensual activity. In support of his argument he claims there is no evidence he was aware of her mental retardation diagnosis, or how Rita was affected by this condition.

But the jury heard also testimony that Rita required constant supervision, and was unable to leave the house unassisted without getting lost. She is considered low-functioning and possesses an IQ of 53. She cannot work or drive a car, and she attended special education classes where her curriculum was modified commensurate with her mental limitations. When appellant

became reacquainted with Rita's mother, he spent time at Rita's house and with her mother, and engaged in activities in which Rita participated. Officer Lang observed, after meeting Rita once and spending only a few minutes with her, that Rita "did not seem quite right."

Significantly, the jury also heard Rita's testimony, and had the opportunity to observe and assess Rita themselves. The evidence at issue here is similar to evidence found sufficient to support a conviction in other cases involving disabled individuals. *See, e.g., Rider v. State*, 735 S.W.2d 291 (Tex. App.—Dallas 1987, no pet.); *Martinez v. State*, 634 S.W.2d 929 (Tex. App.—San Antonio 1982, pet. ref'd). In *Rider*, the record included evidence that the complainant had an IQ of 51 and was considered mildly mentally retarded. The jury was able to observe the complainant on the witness stand. *Rider*, 735 S.W.2d at 292. This Court concluded that the evidence was sufficient to support the jury's determination that the complainant was incapable of appraising the nature of the act of resisting it. *Id.* at 293.

Likewise, in *Martinez*, the female victim was twenty-nine years old and had an IQ of 55 to 65. Our sister court noted that the current version of the penal code focuses the test of consent on the cognitive and physical characteristics of the victim. *Martinez*, 634 S.W.2d at 934. A physician in that case testified that the victim's mental retardation was "manifestly obvious after about two minutes" and she could not deceive a person as to her mental retardation unless that person was equally retarded. *Id.* at 934. In concluding that the victim was incapable of consent, the court noted that the jury was able to observe the victim firsthand on the witness stand as she struggled to relate her version of events. *Id.* at 935.

In the instant case, the jury heard the testimony of all of the witnesses, including Rita. It is the role of the jury to resolve conflicting evidence. From the evidence, the jury could reasonably infer that appellant was aware of Rita's disability. In addition, the jury was in a much better position to determine whether Rita was capable of appraising the nature of the act or of

–6–

resisting it than is this court, and its finding will not be disturbed where it is supported by the record. *See Martinez*, 634 S.W.2d at 935-36. The jury is the sole judge of the weight and credibility of the witnesses' testimony. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2009). Examining the evidence in the light most favorable to the verdict, we conclude that a reasonable jury could have found beyond a reasonable doubt that Rita, as a result of her mental disease or defect at the time of the sexual encounter with appellant, was incapable either of appraising the nature of the act or of resisting it and was a disabled person. Therefore, the evidence is sufficient to support the conviction. Appellant's issue is overruled.

The State requests that we modify the judgment to accurately reflect appellant's pleas and the trial court's findings on the enhancement paragraphs. We have the authority to modify incorrect judgments. *See* TEX. R. APP. P. 43.2(b). Therefore, we modify the judgment to reflect appellant's plea of true to the enhancement paragraphs and the trial court's findings that these paragraphs were true. As modified, the trial court's judgment is affirmed.

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
120930F.U05

–7–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KEITH DWAYNE WILLIAMS, Appellant

No. 05-12-00930-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 3, Dallas County, Texas
Trial Court Cause No. F12-00221-J.
Opinion delivered by Justice FitzGerald.
Justices Lang and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is modified to reflect appellant's plea of true to the enhancement paragraphs and the trial court's findings that these paragraphs were true. As modified, the trial court's judgment is **AFFIRMED**.

Judgment entered February 14, 2014

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE